W. A. ROANE, DIST. ATTY., EX REL. R. H. TUNSTALL, *v.* E. J. MATTHEWS.

1. OFFICE. *Eligibility under constitution. Nonpayment of taxes. Quo warranto.* Const. 1890, §§ 241, 250, 245. Code 1892, §§ 3030, 3031.

　A town marshal is entitled, under code 1892, §§ 3030, 3031, to hold over after the expiration of his term until his successor has been "duly elected and qualified," and may oust, by *quo warranto*, one whose induction into the office is illegal by reason of the fact that when elected he had not paid "all taxes legally required of him" for the preceding year, according to the requirements of § 241, const. 1890, and thus become, upon registration, a qualified elector and eligible to office under §§ 250, 245, const. 1890. *Andrews* v. *Covington*, 69 Miss., 740, distinguished.

2. SAME. *Mistake. Honest belief. Actual payment essential. Payment after election insufficient.*

　The mistaken belief that he has, in due time, paid "all taxes legally required of him," however honestly entertained, will not relieve a delinquent of the effect of his failure to secure the privileges of an elector by complying with the requirements of § 241, const. 1890. Nor will the subsequent payment of the same relieve him of the disqualification under which he rested at the time of the election, as of which time his right to hold office must be determined.

FROM the circuit court of Marshall county.

HON. Z. M. STEPHENS, Judge.

This was a proceeding by *quo warranto* brought by the district attorney, on the relation of R. H. Tunstall, for the purpose of ousting the appellee, Matthews, from the office of marshal of the city of Holly Springs. The petition set up that Matthews had usurped the office, and was exercising its functions on the claim that he was elected thereto at an election of officers that occurred on the second Tuesday in December, 1896, at which time he was not a qualifed elector of the municipality, and in-

eligible to said office by reason of the fact that he had not paid, on or before the first day of February, 1896, all taxes legally required of him, for the two years 1894 and 1895, although he had opportunity to do so according to law, the tax for which he was delinquent being his poll tax for the year 1895; and that, neither at the time of his election nor when inducted into office, in January, 1897, was he duly registered as a voter in said city. It was further averred that the relator, Tunstall, was the legal incumbent of the office, and entitled to hold over until his successor was duly elected and qualified. The plea of the defendant traversed the allegations of the petition, denied that Tunstall was entitled to hold over, and averred that defendant had been duly elected, and was in office under a commission issued by the governor.

The case was tried on the following agreed statement of facts: On August 29, 1895, Tunstall was appointed marshal by the governor to fill a vacancy, and, having received his commission and given bond, entered upon the discharge of his duties, in which he continued until Matthews took possession of the office on the first Monday in January, 1897, since which time Matthews has held possession and discharged the duties of the office. On November 23, 1896, a Democratic primary election to nominate officers for the city was held therein, and, at the same, Matthews was denied the right to vote, because, as held by the judges at the election, he was delinquent for his poll tax for the year 1895. Before making their decision, the election judges heard a statement from Matthews, and also one from R. A. McWilliams, ex-sheriff of the county, through whom Matthews claimed to have paid said poll tax. At the primary election Matthews received more votes than did Tunstall, and was declared the nominee thereof. Before the regular election, on the second Tuesday in December, 1896, the commissioners of election for the city met, within less than five days before the election, to revise the poll books of the city, and, after going over said books, marked the name of said Matthews,

among others, delinquent, by writing opposite his name the letter " D "—meaning delinquent—and said name stood in such shape on the day of said election, and still continues so to stand. After so marking said Matthews' name, the commissioners considered him ineligible to office, and decided to leave his name off the ticket to be voted at the election in November, but afterwards, under a mandatory injunction, placed it thereon, and, at the election, Matthews received a majority of the votes cast, and his election having been duly certified to the secretary of state, he was duly commissioned by the governor, and, on the first Monday in January, 1897, duly qualified by giving bond and taking the oath of office, since which time he has been in possession of the office, discharging the duties thereof.

On October 18, 1895, Matthews was a deputy under said McWilliams, sheriff of the county, who " had contracted with him to pay, and keep paid, all taxes legally assessed against him," and on that day there was a settlement between them, in which McWilliams, who had been paying Matthews' taxes under the contract, turned over to him tax receipts covering several years, which taxes had been paid by McWilliams under the agreement, and also turned over at the same time certain moneys due to the said Matthews. At the time of said settlement taxes for the year were due and payable, and in said settlement Matthews intended to pay, and thought he was paying, all taxes then due by him, including those for 1895, there being one receipt dated January, 1895, which he erroneously supposed to cover the taxes of 1895, but he, in fact, received no receipt for the poll tax of 1895 until after his election, in November, 1896, when it was paid by another person, H. S. Dancy, under protest. The poll tax for 1895 was legally assessed, and Matthews, several times during the year 1896, refused to pay the same, when demanded, on the ground that he had already made payment. After Matthews' election, and after his poll tax for 1895 had been paid and he had received a receipt therefor, but before his induction into office, he applied

for registration before the proper municipal officer, but was refused, on the ground that the books were closed.   On the hearing the petition was dismissed, and from the judgment denying him relief the relator prosecuted this appeal.

*Funt & Belk*, for appellant.

1. When appointed and duly qualified, Tunstall had the right to hold over until a successor in office was duly elected and qualified.  Code 1892, § 3030; *State* v. *Home*, 18 Am. St. Rep., 321.   And this means a succccessor legally eligible to hold the office.   *Taylor* v. *Sullivan*, 22 Am. St. Rep., 729.   This right to hold over until his successor is elected and qualified, confers upon Tunstall the right to test the legality of the election of Matthews by *quo warranto*.   Code 1892, §§ 3020, 3022; *Taylor* v. *Sullivan, supra; United States* v. *Addison*, 6 Wall., 291.

2. Matthews' right to be treated as a qualified elector did not depend upon what he thought he did, but upon an actual compliance with the conditions upon which it rested.   Const. 1890, § 241; Code 1892, § 3631.   Payment of the tax after the election was ineffectual, since his eligibility must be determined by his qualifications when the election took place.   Const. 1890, § 250; *Taylor* v. *Sullivan, supra; Andrews* v. *Covington*, 69 Miss., 740; 74 Am. Dec., 749; 34 Am. St. Rep., 113; 37 *Ib.*, 517; 43 *Ib.*, 397.

3. He was not registered, and no one can be a qualified elector who is not registered.   Const. 1890, § 249.   The marking of his name on the poll book as delinquent was a denial of registration; and from this decision of the commissioners he took no appeal, as he might have done under the law, and it must be treated as final.   Code 1892, §§ 3635, 3627.

*Strickland* v. *Gary*, for appellee.

1. The relator, being a private person, cannot found his claim on the ineligibility of Matthews.   *Andrews* v. *Covington*, 69 Miss., 740.   The state alone, through its proper officer, can

do that. Section 3030, code of 1892, providing that the marshal shall hold over until his successor is "duly elected and qualified," was enacted for the benefit of the public, it being the policy of the state that no public office shall be vacant. The term "duly elected and qualified," as used in the statute, means nothing more than that the person elected must comply with requirements of the statute—that is, he must give bond and take the oath of office. *State* v. *Neibling*, 6 Ohio St., 44. When the respondent, Matthews, was commissioned, gave bond, and took oath of office and entered upon the discharge of duties, as required by law, even if he is not eligible to hold it, this question cannot be adjudicated in this proceeding by a private individual, unless it is shown that the relator is entitled to the office. *Harrison* v. *Greaves*, 59 Miss., 453; *Andrews* v. *Covington*, 69 *Ib.*, 740. We call the court's especial attention to the case of *State* v. *Neibling*, 6 Ohio St., 44. The burden of proof is upon the relator to show that he is eligible to hold the office. The facts show that Tunstall was registered in Holly Springs a few days before his appointment, but it is not shown that he had resided in the voting precinct long enough to entitle him to vote, or that he had paid all taxes legally required of him. The pleas deny that he is eligible, and the burden of proof is upon him.

2. The facts show that Matthews was misled by the collector, and did not have "the opportunity of paying" his poll tax contemplated by sec. 241, constitution 1890. The course pursued by that officer caused him to believe that he had paid the tax.

3. Payment of taxes is not a prerequisite to registration, and the letter "D," placed on the poll book after Matthews' name, was only a memorandum for the use of the commissioners on election day. *Bew* v. *State*, 71 Miss., 1.

4. Payment of the tax before his induction into office made Matthews eligible. Section 250, constitution 1890, prescribing that "qualified electors, and no others, shall be eligible to office," etc., does not mean the candidate must be a qualified

elector at the time of his election. The section relates to the holding of office. *Taylor* v. *Sullivan*, cited for appellant, rests upon a different constitutional provision, and is without application to the present controversy. *Vide*, also, *Smith* v. *Moore*, 90 Ind., 294; *Vogel* v. *State*, 107 *Ib.*, 374. The word eligible relates to the status of the party at the commencement of the term for which he was elected.

WHITFIELD, J., delivered the opinion of the court.

Tunstall had the right to hold over, as marshal of Holly Springs, until a legal successor had been duly qualified. Code 1892, §§ 3030, 3031. And his successor must be one who is legally eligible. *Taylor* v. *Sullivan*, 22 Am. St. Rep., 729. And Tunstall, on the facts of record, had the right to test Matthews' right to the office in this proceeding, which is a *quo warranto* by the state, in the name of the district attorney, on the relation of R. H. Tunstall. Code 1892, §§ 3520–3522; *Taylor* v. *Sullivan, supra.* In the case of *Andrews* v. *Covington*, 69 Miss., 740, the relator, Covington, was not claiming under the right to hold over, but was claiming against Andrews' right to hold over, on the ground that he, Covington, had just been elected. The relator, Covington, failed to show his own title—his own eligibility—and the court said that that action, being a private suit to try the right to the office, failed, "for the reason that Covington had not shown himself to be legally entitled to be inducted therein." He admitted that he was not a qualified elector, and we held that, not being a qualified elector, sec. 250 of the constitution made him ineligible to hold office. Here Tunstall was legally qualified as an elector, and legally appointed, and does not claim on the ground of any new election, but claims that Matthews is usurping the office, and that he, Tunstall, is, under the sections of the code cited, entitled merely to hold over—being legally in already—until an eligible successor shall be legally qualified.

The qualification of an elector—so far as the payment of his

taxes is concerned, as prescribed by sec. 241, constitution of 1890—depends upon the fact of the actual payment of such taxes, and not the party's thought or supposition or belief, however honestly entertained, that the taxes have been paid; nor upon any agreement he may have with another to pay them for him. The right to vote as an elector rests upon no such shadowy grounds as these. Section 250 of the constitution provides that "all qualified electors, and no others, shall be eligible to office, except as otherwise provided in this constitution;" and section 245 provides that "electors in municipal elections shall possess all the qualifications herein prescribed, and such additional qualifications as may be provided by law." The "eligibility to office" meant in section 250 is eligibility at the time of election, and, unless then eligible by the payment of taxes, a candidate cannot become so by paying the taxes afterwards. This is the manifest meaning of the constitution, and any other construction leads to the most absurd results. The precise question was thus determined in *Taylor* v. *Sullivan*, *supra*, on irrefragable reasoning, construing a constitutional provision substantially identical. Compare *Andrews* v. *Covington*, *supra*. Learned counsel for appellee cite two cases *contra:* *Smith* v. *Moore*, 90 Ind., 294, and *Vogel* v. *State*, 107 *Ib.*, 374. But they are wholly unlike this case, merely holding that one who held a judicial office by election may, under the Indiana constitution, section 176 (R. S., 1881), "be elected to an office not judicial, the term of which will begin after his judicial term expires;" and Elliott, J., dissented from this even in the case in 90 Ind., *supra*. Learned counsel also insist that payment of taxes is not a condition to registration; but it is a condition of the right to vote. "One is not qualified to vote if not duly registered." *Bew* v. *State*, 71 Miss., 6.

Clearly, Matthews was not a qualified elector at the date of the election, second Tuesday in December, 1896, for marshal, and was not eligible to hold the office, and did not become so by the subsequent payment of his poll tax for the year 1895,

by Dancy for him, on December 11, 1896, and is therefore holding the office without authority of law; and clearly, also, Tunstall has the right to hold over until an eligible successor, within the meaning of the constitution as above declared, has legally qualified.

It follows that the judgment must be reversed, and, the case being here on an agreed statement of facts, judgment final will be entered here, removing E. J. Matthews, appellee, from the said office, and debarring him therefrom, and for costs.

*So ordered.*