**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-EC-01216-SCT**

*DON GRIST*

*v.*

*STEVEN E. FARESE, SR. AND ANTHONY L.*
*FARESE*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/9/2003 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | W. TERRELL STUBBS |
| ATTORNEYS FOR APPELLEES: | STEVEN ELLIS FARESE, SR. |
| | ANTHONY L. FARESE |
| | DAVID LEE ROBINSON |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 09/18/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This electoral candidate qualification case involves an appeal from the decision of the Hinds County Circuit Court which found that Don Grist was not qualified as a candidate for the office of District Attorney for the Third Circuit Court District.  Both Grist and those opposing his candidacy appealed the circuit court's decision.  Because of the August 5, 2003, party primary election we have given this appeal expedited consideration. By order of July 22, 2003, we previously affirmed the circuit court's judgment and noted that our opinion would issue in due course.  After consideration of the matter we find that the

judgment of the circuit court should be affirmed, but on a different basis than that determined by the circuit court.

## FACTS

¶2.     In 1998 Don Grist was serving the last year of a term as chancellor for the Eighteenth Chancery Court District.  Three complaints were filed against Grist with the Mississippi Commission on Judicial Performance in 1996-97.  These complaints were consolidated into one complaint.  On September 17, 1998, Grist and the Commission resolved the consolidated complaint by entering into a Memorandum of Understanding.  In the Memorandum Grist agreed to withdraw as a candidate in the pending election for chancellor for the Eighteenth Chancery Court District and not to seek state judicial or legislative office, including appointment as a special judge by the Mississippi Supreme Court, at any time in the future.  Grist was allowed to serve out the remainder of the term he was serving, which ended on December 31, 1998.  Grist also agreed to recuse himself from any action involving Farese, Farese, & Farese, P.A.  Steven E. Farese, Sr. and Anthony L.  Farese are partners in this firm.

¶3.     On March 8, 2003, certain attorneys ("Petitioners") from the Third Circuit Court District filed a Petition Requesting Non-Qualification of Candidate before the State Executive Committee of the Democratic Party of the State of Mississippi.  The petition alleged that Don Grist had filed qualifying papers to seek election to the office of District Attorney for the Third Circuit Court District of Mississippi in the Democratic Primary Election in the 2003 Election Year.  Petitioners alleged that Grist had not been engaged in the practice of law since December 31, 1998, that he was not an active member of the Mississippi Bar, and therefore did not meet the statutory qualifications for the position of District Attorney, Miss. Code Ann. §  25-31-1 (Rev. 2003).  The petition further stated Grist had not complied with Rule 3 of the Rules and Regulations for Mandatory Continuing Legal Education.  The petition finally asked that

2

the Executive Committee take appropriate action such that Grist's name not appear on the ballot for the office in question.

¶4.     On March 15, 2003, the Executive Committee denied the petition and determined that Grist was qualified to serve in the office of District Attorney if elected.

¶5.     Pursuant to Miss. Code Ann. § 23-15-961 (Rev. 2001), two of the petitioners, Steven E. Farese, Sr., and Anthony L. Farese, filed a Petition for Judicial Review in the Hinds County Circuit Court, First Judicial District on March 21, 2003.  The petition alleged that Don Grist was not legally qualified to have his name placed on the ballot for District Attorney.  The petition contained the following allegations:  (1) that Grist was not a regular licensed and practicing attorney; (2) that Grist was not enrolled as an active member of the Mississippi Bar and had not complied with the Rules and Regulations for Mandatory Continuing Legal Education; and (3) that Grist was not authorized to practice law because he had been suspended from the practice of law and required an order from the Supreme Court before he could be reinstated to active status.  The petition asked that Grist be disqualified as a candidate for District Attorney.

¶6.     This Court appointed Circuit Judge William E. Chapman, III, to preside in this matter pursuant to Miss. Code Ann. § 23-15-961 (5) (Rev. 2001).

¶7.     On April 22, 2003, Don Grist filed his Answer to Petition for Judicial Review and Counter Petition for Relief.  Grist denied that he was not legally qualified to have his name placed on the ballot for District Attorney for the Third Circuit Court District.

¶8.     A hearing was held on the matter on May 27, 2003.  The Fareses called the following witnesses: William M. Bost, Jr., who had served as member, chairman and special prosecutor for the Commission on Judicial Performance; Luther T. Brantley, III, executive director of the Commission on Judicial Performance; Don Grist, adversely; and Teresa Robinson, membership records administrator for the

Mississippi Bar. Don Grist called Perry Tedford, who testified that Grist was representing him on a social security disability case, and Grist testified in his own behalf. The circuit court made the following findings of fact as a result of the hearing:

> Regarding the issue of whether Grist is a practicing attorney, [Perry] Tedford testified he had sought Grist out for advice on a social security matter, and that he talked to Grist around September 2002, and again in January 2003. Tedford further testified Grist directed him to an attorney, Gary Parvin of Grenada.
>
> Grist does not have a file regarding Tedford, has not executed any documents claiming to be Tedford's representative, does not have a fee arrangement with Tedford, has not written any letters to anyone on Tedford's behalf and has not received any letters from anyone concerning Tedford. Further, neither Grist nor Tedford has executed any appointment of representative form advising the Social Security Administration that Grist was Tedford's attorney. Tedford did, however, testify that Grist had performed a title search for him in about 1998. Grist was a Chancellor in 1998 and, of course, was prohibited from practicing law then as well as during the times Tedford testified to have talked to Grist around September 2002, and again in January 2003.
>
> Grist's testimony concerning another purported client was that he had helped the father of an individual by the name of Brenda Cook ("Cook") when she was incarcerated in the Calhoun County Jail for writing bad checks. Grist further testified he spoke with the public defender, Paul Moore, of Calhoun County and with the County Attorney, Terry James. Grist admitted he was never Cook's attorney and that he did not receive a fee for any service he provided to her father. He also admitted he does not have a file regarding Cook and that has never sent any correspondence to anyone regarding Cook either.
>
> Grist also testified that he may possibly have another client in the near future.
>
> The above-mentioned matters relating to Tedford, Cook and the possible future client were the extent of the proof that Grist had been engaged in the practice of law. On the other hand, from March 15, 2003, until May 27, 2003, the date of trial, Grist had chosen not to and does not intend to order any business cards or any business stationary in the future. He has, however, obtained campaign handbills. Grist does not have a formal office, but claimed to be practicing out of a home office, which does not have a dedicated phone line. Grist also does not have his office designated in any public listing and does not have a legal secretary or any of the usual trappings associated with the practice of law. Finally, Grist admitted that he did not have any open client files.
>
> It is abundantly clear that, presently, Grist is not engaged in the practice of law as defined by statute or under any rational interpretation of the phrase in a legal sense. His

4

involvement with Tedford and Cook's father was no more than referring individuals to a practicing attorney, something done routinely by members of the public who are not members of the Bar.

¶9. The circuit court further found, however, that Grist was required to be a practicing attorney at the time of his election, so that consideration of this question at the time of qualification was premature.

¶10. The circuit court entered its judgment granting the Petition for Judicial Review, disqualifying Don Grist as a candidate for District Attorney in the Third Circuit Court District, and ordering that the State Executive Committee of the Democratic Party remove Grist's name from the ballot. The circuit court based its decision on the finding that Grist had agreed, through a Memorandum of Understanding with the Commission on Judicial Performance, not to run for judicial office in the future. The circuit court found that the office of District Attorney was a quasi-judicial office.

¶11. On June 11, 2003, Grist filed his Notice of Appeal and Bill of Exceptions with the circuit court.

¶12. On June 12, 2003, the Fareses filed their Notice of Appeal and Bill of Exceptions. Petitioners listed the following exception: Examination now of whether Grist meets the statutory qualifications under Miss. Code Ann. § 25-31-1 with respect to if he is a practicing attorney, or for that matter if he is a licensed attorney, is premature, as he seeks only to move forward with his candidacy and has not yet been elected to the office of District Attorney in any primary or general election. As we find this issue determinative, we will not discuss the other exceptions raised.

## STANDARD OF REVIEW

¶13. Findings of fact are reviewed under the familiar substantial evidence/manifest error rule. *Rice Researchers, Inc. v. Hiter*, 512 So.2d 1259, 1264 (Miss. 1987). "In reviewing questions of law, the Court proceeds de novo." *Callahan v. Leake County Democratic Executive Comm.*, 773 So.2d

938, 940 (Miss. 2000). Miss. Code Ann. § 23-15-961(6) adds in part: "The Supreme Court shall have the authority to grant such relief as is appropriate under the circumstances."

**ANALYSIS**

**I.   IS IT PREMATURE TO EXAMINE WHETHER GRIST MEETS THE STATUTORY QUALIFICATIONS FOR DISTRICT ATTORNEY UNDER MISS. CODE ANN. § 25-31-1 WITH RESPECT TO WHETHER GRIST IS A PRACTICING ATTORNEY (OR FOR THAT MATTER WHETHER GRIST IS A LICENSED ATTORNEY) WHEN GRIST HAS NOT YET BEEN ELECTED TO THE OFFICE OF DISTRICT ATTORNEY IN ANY PRIMARY OR GENERAL ELECTION?**

¶14.   The qualifications for the office of district attorney are found in Miss. Code Ann. § 25-31-1 (Rev. 2003):

> The district attorney shall possess all the qualifications of county officers and, in addition thereto, shall be a regular licensed and practicing attorney and shall have been duly admitted to practice before the supreme court of the State of Mississippi for a period of two years.

¶15.   The circuit court cited *In re Williamson*, 838 So.2d 226 (Miss. 2002), and *Darby v. Mississippi Board of Bar Admissions*, 185 So.2d 684 (Miss. 1966), in support of its finding that Grist was not presently engaged in the practice of law. However, the circuit court also found that whether Grist was a practicing attorney at the time of election was determinative based on this Court's decision in *State ex rel. Plunkett v. Miller*, 162 Miss. 149, 137 So. 737 (1931). Plunkett and Warrington were elected trustees of the Yazoo County school district. They then failed to pay taxes on some of their property, and it was alleged that they were disqualified to hold office. As trustees they were:

> public officers, and under section 250 of the Constitution must be, to be eligible, qualified electors at the time of their election or selection. In *Roane v. Matthews*, 75 Miss. 94, 21 So. 665, this court construed section 250 of the Constitution, and held that the eligibility referred to therein, at which time the qualification must exist, was eligibility at the time of the election. In the course of the opinion, page 99 of the official report (21 So. 665), the

6

court said: "The qualification of an elector, so far as the payment of his taxes is concerned, as prescribed by section 241, Const. 1890, depends upon the fact of the actual payment of such taxes, and not the party's thought or supposition or belief, however honestly entertained, that the taxes have been paid; nor upon any agreement he may have with any one that one shall pay them for him. The right to vote as an elector rests upon no such shadowy grounds as these. Section 250 of the constitution provides that 'all qualified electors, and no others, shall be eligible to office, except as otherwise provided in this constitution.' *** The 'eligibility to office' meant in section 250 is eligibility at the time of election. Unless then eligible by the payment of taxes, a candidate cannot become so by paying the taxes afterwards. This is the manifest meaning of the constitution, and any other construction leads to the most absurd results."

. . . .

The Constitution, as construed by *Roane v. Matthews*, supra, means that the qualification must exist at the time the officer is elected or selected; the status of his qualification to hold office is determinable as of that date.

*Plunkett*, 137 So. at 738.

¶16.    *Plunkett* and *Roane v. Matthews*, 75 Miss. 94, 21 So. 665 (1897), both cite Article 12, § 250

of the Mississippi Constitution, which states:

> All qualified electors and no others shall be eligible to office, except as otherwise provided in this Constitution; provided, however, that as to an office where no other qualification than that of being a qualified elector is provided by this Constitution, the legislature may, by law, fix additional requirements for such office.

The Legislature has fixed additional requirements for the office of District Attorney through § 25-31-1.

¶17.    The Fareses cite Miss. Code Ann. § 23-15-299(7) (Rev. 2001), which states:

> (7) Upon receipt of the proper fee and all necessary information, the proper executive committee shall then determine whether each candidate is **a qualified elector of the state, state district, county or county district which they seek to serve, and whether each candidate meets all other qualifications to hold the office he is seeking or presents absolute proof that he will, subject to no contingencies, meet all qualifications on or before the date of the general or special election at which he could be elected to office.** The committee also shall determine whether any candidate has been convicted of any felony in a court of this state, or has been convicted on or after December 8, 1992, of any offense in another state which is a felony under the laws of this state, or has been convicted of any felony in a

federal court on or after December 8, 1992. Excepted from the above are convictions of manslaughter and violations of the United States Internal Revenue Code or any violations of the tax laws of this state unless the offense also involved misuse or abuse of his office or money coming into his hands by virtue of his office. If the proper executive committee finds that a candidate either **(a) is not a qualified elector, (b) does not meet all qualifications to hold the office he seeks and fails to provide absolute proof, subject to no contingencies, that he will meet the qualifications on or before the date of the general or special election at which he could be elected,** or (c) has been convicted of a felony as described in this subsection, and not pardoned, then the name of such candidate shall not be placed upon the ballot.

Where there is but one (1) candidate for each office contested at the primary election, the proper executive committee when the time has expired within which the names of candidates shall be furnished shall declare such candidates the nominees.

(emphasis added).

¶18. The circuit court's interpretation of *Plunkett* would negate the statutory process of qualification as provided in § 23-15-299. The Fareses cite *Hinds County Election Commission v. Brinston*, 671 So.2d 667 (Miss. 1996), where the residency requirement in the circuit clerk's election was considered and decided before the election. We find that the procedure provided in § 23-15-299(7) is controlling in this case. The circuit court's finding that Grist was not a practicing attorney is supported by the testimony of the hearing, as previously set out in this opinion, as is the finding that Grist did not supply absolute proof that he would meet that qualification of the office of district attorney on or before the date of the general election. The circuit court's judgment is affirmed on this basis.

## CONCLUSION

¶19. The judgment of the circuit court is affirmed on the ground that Don Grist failed to meet the statutory requirements of Miss. Code Ann. § 25-31-1.

¶20. **AFFIRMED.**

8

**PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, EASLEY AND GRAVES, JJ., NOT PARTICIPATING.**