211 So.2d 821 (1968)
Mrs. Cornelia Jordan STUBBS, Complainant-Appellant,
v.
Mrs. Jane Wall STUBBS and Mrs. Emily S. Kelley, Defendants-Appellees.
No. 44874.
Supreme Court of Mississippi.
June 10, 1968.
Rehearing Denied July 8, 1968.
*822 Laub, Adams, Forman & Truly, Natchez, for appellant.
Zuccaro, Wood & Pintard, Natchez, for appellees.
PATTERSON, Justice:
The appellant, Mrs. Cornelia Jordan Stubbs, brought this suit in the Chancery Court of Adams County wherein she prayed, there being no children of this marriage, to be declared the sole heir at law of Frank Palmer Stubbs, III, her deceased husband. She alleged that prior to his death her husband was a resident of Natchez, Adams County, Mississippi, where he had his principal place of residence, but at the time of his death he was on a trip to Europe where his body was found in his hotel room in Munich, Germany.
The defendants, the mother and sister of the decedent, in answering the petition, denied that decedent was a resident of Adams County, Mississippi, or that he had his principal place of residence therein at the time of his death. They averred his domicile was Baton Rouge, Louisiana, and argue that this legal domicile was never changed. From a decree adjudicating that the decedent had acquired a domicile in Baton Rouge, Louisiana, and thereafter had never acquired any other domicile, the complainant appeals.
The assignments of error, among others, are that the court erred in finding that Frank Palmer Stubbs, III, was a citizen of Louisiana at the time of his death; that the decision of the trial court was contrary to the overwhelming weight of the evidence; and that the decree of the trial court was contrary to law.
Frank P. Stubbs, III, was born February 15, 1937. In 1955 his mother and father established their residence in Natchez, Mississippi. The decedent, a minor at this time, attended school in Natchez for a short time and in Pennsylvania where he graduated in June 1955. Following graduation he resided with his mother in Natchez for approximately one month prior to entering the army. He remained in the army for three years and upon completion of his tour of duty in 1958 returned to Natchez and resided with his mother until he entered Tulane University in New Orleans, Louisiana, that fall. During this interval he registered to vote in the city of Natchez, and Adams County, Mississippi, giving as his place of residence 309 North Pearl Street, Natchez, Mississippi. He remained in New Orleans, Louisiana, attending Tulane University until January 1960 at which time he went to British Guiana to supervise his father's business due to the illness of the father. He resided in British Guiana until April when he returned home after his father's death. He remained in Natchez, Mississippi, for a few days and then returned to British Guiana, residing there until his departure in the summer of *823 1960 for Boston, Massachusetts. On November 11, 1960, while in Boston, Stubbs and the appellant, a resident of New Orleans, Louisiana, were married. Thereafter, in the fall of 1961 Stubbs and his wife returned to the south where Stubbs entered the law school of Louisiana State University in Baton Rouge.
During decedent's tenure at Louisiana State University he and his wife resided at 239 East Chimes Street, Baton Rouge. While there they occasionally visited the appellees at their homes in Adams County, Mississippi.
In July 1964 Stubbs and his wife separated and the appellant returned to New Orleans. Subsequent to the separation Stubbs advised his landlady on July 14, 1964, that he was leaving Baton Rouge; however, he paid two months advance rent in order that his wife might have time to remove the furniture from the home. On that date, July 14, 1964, Stubbs packed his clothes and personal belongings and brought them to Natchez, Mississippi. From this time until he departed for Kentucky on October 30, 1964, the decedent resided with his mother in Natchez, Mississippi, with occasional intervening visits with his sister in that city. He never returned to Baton Rouge, Louisiana.
While residing in Baton Rouge, Stubbs on occasion, but not continuously, attended school, and while residing at 239 East Chimes Street secured a resident Louisiana hunting license for the years 1962 and 1963. He was issued a Louisiana driver's license on October 12, 1962, and on September 13, 1962, he registered to vote in Baton Rouge, and he and his wife worked together in a political headquarters in behalf of a political candidate.
While in Natchez, subsequent to the separation, Stubbs opened a banking account with the City Bank and Trust Company of that city on August 29, 1964. The signature card lists his place of residence as 309 North Pearl Street, Natchez, Mississippi. This account was active and checks were drawn thereon until November 25, 1964.
The record reflects that Stubbs was a student throughout this time and was never engaged in any occupation except for a very short time while in Boston. He was unsettled and apparently unsure of where he wanted to establish himself. In discussing this matter with his mother he stated that he did not intend to live in either Natchez, Mississippi, or Baton Rouge, Louisiana. In discussions with Dr. Whittington, a resident of Natchez and a lifelong friend, he expressed thoughts of residing in Kentucky, Australia, or Alaska, and entertained ideas of entering the practice of law in Monroe, Louisiana, where his grandfather and great grandfather had legal careers. His uncertainty was also expressed to Mr. Neville Marshall, who summed up their discussions in this manner:
"A. Well, in the summer of 1964 when he was in Natchez we talked about it several times in rather general terms. He talked about things he might do, places he might go. He expressed a desire to find some goal, purpose, something to do.
* * * * * *
"Q. Did he make any statements with regard to Natchez in particular?
"A. He didn't like Natchez. He didn't want to stay here."
Mr. Kelley, the husband of one of the defendants, testified that the decedent was unhappy in Natchez and did not intend to remain there. Mr. Edwin Mack, a banker of Lexington, Kentucky, testified to the same effect that decedent did not like Natchez and did not intend to live there. It was his testimony also that Stubbs was not certain of his plans for the future and thought perhaps he might find a job around Lexington, but finally determined to visit Germany as he had been there in military service and was happier there than at any place he could recall. Stubbs obtained an *824 advancement from the Kentucky bank with which to visit Germany.
In his application of November 16, 1964, to obtain a passport for the foreign tour Stubbs made oath that his permanent residence was "309 N. Pearl St., Natchez, Mississippi" and the county of his residence "Adams." He further made oath that in the event of his death or accident his mother was to be notified at "309 N. Pearl St., Natchez, Mississippi." The evidence reflects no further communication from Stubbs other than a telephone conversation with Mr. Mack of the Kentucky bank wherein additional funds were requested. As mentioned, Stubbs' dead body was found in his hotel room in Munich, Germany, on January 30, 1965. At his mother's request he was buried in the family plot in Natchez, Mississippi.
Quite clearly the domicile established by the mother and father of the decedent in Natchez, Mississippi, in 1955 became the domicile of the minor child. Boyle v. Griffin, 84 Miss. 41, 36 So. 141 (1904). This domicile of origin continues until another is acquired. Lucia v. Lucia, 200 Miss. 520, 27 So.2d 774 (1946), and Smith v. Deere, 195 Miss. 502, 16 So.2d 33 (1943).
The lower court held that Stubbs acquired a domicile and fixed place of residence in Baton Rouge, Louisiana. There is ample evidence to support this conclusion of the lower court. The more difficult question, and the crux of this suit, is whether the decedent abandoned this domicile and reestablished his domicile in Natchez, Mississippi. The uncontradicted evidence signifies a positive intent on the part of the decedent to leave Baton Rouge, Louisiana. This intent was coupled with the actions of the decedent in packing his personal belongings and physically leaving that city for his mother's residence in Natchez. One of the steps necessary to the acquisition of a domicile of choice was thus accomplished as there must first be an intent to abandon the old before a new domicile can be established. Lucia, supra, and Smith, supra.
The cogent question to be determined, therefore, is: Did the decedent by his acts or words subsequent to departing Baton Rouge signify an intent on his part to reestablish his domicile in Mississippi? In considering the problem we do so in the light of Smith v. Smith, 194 Miss. 431, 434, 12 So.2d 428, 429 (1943), wherein this Court stated the prerequisites of domicile to be:
To constitute complainant an actual bona fide resident of Forrest County there must have been, (1) an actual residence voluntarily established in said county, (2) with the bona fide intention of remaining there, if not permanently, at least indefinitely.
From the conversations of Stubbs with his mother, his brother-in-law, and other witnesses who were disinterested, it is apparent that Stubbs did not like or desire to make Natchez his permanent domicile. However, the criterion to the establishment of a domicile is not necessarily limited by permanency of domicile as it may be established by residence at the new domicile, if not permanently, at least indefinitely.
Relating the facts at hand to the applicable principles of law it is apparent that the decedent intended to legally abandon, and in fact had physically abandoned, his domicile in Baton Rouge. Clearly, the legal abandonment would not be completed until a domicile was established in another locality. It need not be the intent of the person seeking the new domicile that his place of residence thereat be permanent, but only that it be indefinite. Here the decedent did not intend Natchez to be his permanent domicile, yet we are of the opinion his actions of living therein, the moving of his belongings thereto, and his expressing a sworn intent, were sufficient to constitute Natchez, Mississippi, his domicile of choice though it, too, could be abandoned and a new domicile acquired at some future date.
*825 The foundation of domicile is intent. This intention may be established by physical presence, declaration of intent, and all relevant facts and circumstances, and in this connection it has been held that the declarations of the party himself are most important. In Hairston v. Hairston, 27 Miss. 704, 720 (1854), this Court, in speaking of domicile, stated:
* * * From the nature of the subject, it is impracticable to lay down any very definite rule by which either the fact of a permanent residence, or the intention of permanent residence, is to be ascertained. In none of the decided cases on this subject is there a definite period of time recognized, as being necessary to create a domicil. The time may be shorter or longer, according to the circumstances; and in all cases, the question whether a person has or has not acquired a domicil, must depend mainly upon his actual, or presumed intention. * * * As a domicil may be acquired by a longer or shorter residence, depending upon the circumstances of the case, its true basis and foundation must be the intention, the quo animo of residence. The apparent or avowed intention of residence, not the manner of it, constitutes domicil. Bradley v. Lowry, 1 Speer, Eq. R. [S.C.] [39 Am.Dec. 142]. In the absence of any avowed intention, and of acts which indicate a contrary intention, a long continued residence is regarded as a controlling circumstance in determining the question of domicil. In most cases it is unavoidably conclusive. The Ship Ann Green, 1 Gall. R. [U.S.] 274 [Fed.Cas.No. 414]; The Harmony, 2 C. Rob. R. Adm. 322. In the matter of Catherine Roberts' Will, 8 Paige Ch. [N.Y.] 519, it was said, "the declarations of the party himself, where he can have no object or inducement to falsify the truth or to deceive those to whom such declarations are made, are the best evidence of his intention to make his actual residence his permanent residence also." (Emphasis added.)
See also Johnson v. Johnson, 191 So.2d 840 (Miss. 1966).
We think that under the relevant facts and circumstances in this case, removal of personal belongings to, actually residing in, Natchez, and the sworn declaration of the decedent on November 24, 1964, avowing his residence to be 309 N. Pearl St., Natchez, Mississippi, is the best and only real evidence of his intent as to domicile and was sufficient to reestablish the same in Natchez, Mississippi. In our opinion the solemnity of the oath rises above the general desultory statements to his mother and friends that he did not care for Natchez, Mississippi, as a place of residence. We hold, therefore, the evidence being uncontroverted with the exception of one insignificant detail, that the lower court erred as a matter of law in finding to the contrary.
Reversed and rendered.
ETHRIDGE, C.J., and RODGERS, JONES, and BRADY, JJ., concur.
GILLESPIE, P.J., and INZER, SMITH, and ROBERTSON, JJ., dissent.