# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-EC-00965-SCT

*STEVE HALE*

*v.*

*STATE OF MISSISSIPPI DEMOCRATIC
EXECUTIVE COMMITTEE, RICKEY COLE,
CHAIRMAN AND BILL STONE*


| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2015 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| TRIAL COURT ATTORNEYS: | JOSHUA A. TURNER |
| | MONA T. PITTMAN |
| | EDWARD BLACKMON, JR. |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | JOSHUA A. TURNER |
| | MONA T. PITTMAN |
| ATTORNEYS FOR APPELLEES: | EDWARD BLACKMON, JR. |
| | JANESSA EMONTAN BLACKMON |
| | BRADFORD JEROME BLACKMON |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 07/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     In October 2013, William "Bill" Stone moved from Ashland in Benton County to Holly Springs in Marshall County.  He now seeks the Democratic Party nomination for the newly-created Senate District 10, a district which encompasses parts of Marshall County, including Stone's home in Holly Springs, and parts of Tate County. On March 2, 2015, Steve

Hale,[1] a resident of Tate County who also is seeking the Democratic nomination for District 10, filed an objection to Stone's candidacy with the State of Mississippi Democratic Executive Committee, arguing that Stone is ineligible to run for that office because he does not meet the two-year residency requirement enunciated in Article 4, Section 42, of the Mississippi Constitution. Specifically, Hale argued that Stone could not be a resident of Marshall County because Stone had not abandoned his domicile in Benton County. Following its hearing on March 13, 2015, the Executive Committee rejected Hale's objection and certified that Stone had satisfied the qualifications for candidacy. Hale sought judicial review in the Circuit Court of the First Judicial District of Hinds County. On June 19, 2015, the circuit court held that Stone had been domiciled in Marshall County since October 2013 and was qualified to run for senator of District 10. Hale appealed to this Court.[2] We affirm the decision of the Circuit Court of the First Judicial District of Hinds County because, in accordance with the Mississippi Constitution and precedent of this Court, the circuit court was not in manifest error in holding that Stone had proven that he had established his domicile in Marshall County and that he therefore was qualified to run for the office of senator for District 10.

## FACTS AND PROCEDURAL HISTORY

---

[1] Both Stone and Hale currently serve in the Mississippi Senate, Stone in present District 2 and Hale in present District 10.

[2] With the Democratic Party primary election rapidly approaching — August 4, 2015 — we have expedited the appeal. *See* Miss. Code Ann. § 23-15-961(6) (Rev. 2007).

¶2. In 1988, Bill Stone purchased a home at 47 Winborn Avenue in Ashland, Mississippi, which is located in Benton County. He lived in the Ashland home with his wife, Debbie, off and on from 1988 to 2013. During his residency in Ashland, Stone was active in the local community, holding membership in the Ashland Civic Club, volunteering with the Ashland volunteer fire department, and attending Ashland Baptist Church. In 2007 and 2011, Stone was elected to represent District 2 in the Mississippi Senate. At that time, Senate District 2 was comprised of parts of Benton, Tippah, and Marshall Counties. Sixty-five percent of Senate District 2 was in Marshall County.

¶3. In 2012, Mississippi underwent significant redistricting, which affected the boundary lines for the State's legislative districts, both for the House of Representatives and Senate. Under the redistricting plan, Stone's home on Winborn Avenue in Ashland was located in Senate District 3. Stone decided that he preferred to reside in Holly Springs, which had been part of the former Senate District 2 and which he had represented as State Senator. Holly Springs had become a part of Senate District 10. The newly-drawn Senate District 10 included portions of Marshall and Tate Counties.

¶4. In October of 2013, Stone rented a house from his brother at 305 Peel Lane in Holly Springs. Stone and his wife decided to live exclusively in the home's "mother-in-law suite" in order to cut back on their expenses. The "mother-in-law suite" is less than half the size of Stone's Ashland home. After moving into the Peel Lane house, Stone immediately contacted the Holly Springs Utility Department to obtain electrical service for the home. The Peel Lane house's water was provided by a private well, and the home did not have natural

3

gas service. Stone transferred his DirectTV box and service to his new residence. For the majority of the time that Stone resided at the Peel Lane house, the State Senate was in session in Jackson.

¶5. Although he had claimed homestead exemption in 2013 for his home in Ashland, Stone did not claim homestead exemption in 2014, because the rental home on Peel Lane in Holly Springs was ineligible. Furthermore, in February 2014 and September 2014, when they came due, Stone registered the car tags on his and his wife's cars in Marshall County. In April 2014, Stone registered to vote in Marshall County. On his 2014 federal income tax return, Stone listed the home on Peel Lane as his home address. He also adjusted the mileage deduction he claimed on his federal income tax return to reflect a move to Marshall County. Additionally, on October 27, 2013, he notified the State Senate comptroller of his change of address, and the comptroller sent an e-mail to every member of the Senate informing them of the change.

¶6. Stone also transferred his other affiliations from Ashland to Holly Springs. He did not renew his membership in the Ashland Civic Club, and he resigned from his post as an Ashland volunteer firefighter. He and his wife began attending church at Heritage Apostolic Church in Holly Springs.

¶7. In July 2014, Stone purchased a home at 200 Johnson Park in Holly Springs. In 2015 he claimed homestead exemption for the Johnson Park home and listed the home as his residence on his federal income tax return.

4

¶8.     Stone did not sell his house in Ashland when he moved to Holly Springs, planning to convert it into a rental property.  When Stone was in Jackson serving in the Mississippi Legislature or when he traveled out of town, his wife frequently stayed in the Ashland home.  Occasionally, Stone's wife did laundry at the Ashland house or took her lunch break there.  In July 2014, Stone filled the Ashland house's above ground pool for his grandchildren to swim there during the summer.  Stone's grandchildren regularly left their bikes on the Ashland house's front lawn.

¶9.     After moving to Holly Springs, Stone announced that he was planning to run for the District 10 Senate seat.  On March 2, 2015, Steve Hale, a resident of Tate County who also was seeking the Democratic nomination for District 10, filed an objection to Stone's candidacy with the State of Mississippi Democratic Executive Committee, arguing that Stone was ineligible to run for that office because he did not meet the two-year residency requirement found in Article 4, Section 42, of the Mississippi Constitution.  Specifically, Hale argued that Stone could not be a resident of Marshall County because he never had abandoned his domicile in Benton County. After conducting a hearing on the matter on March 13, 2015, the Executive Committee rejected Hale's objection and certified that Stone had established the requisite qualifications for District 10 Senate candidacy.

¶10.    On March 16, 2015, Hale filed a Petition to Contest the Qualifications of Bill Stone as a Candidate for Senate District 10 in the Circuit Court of the First Judicial District of Hinds County, seeking judicial review of the State of Mississippi Democratic Executive Committee's decision.  On March 18, 2015, this Court assigned a special judge, the

5

Honorable Frank Vollor, to decide whether Stone had established his domicile in Holly Springs, Marshall County. On June 18, 2015, the circuit court conducted an evidentiary hearing. In support of his allegation that Stone had not abandoned his home in Benton County, Hale presented utility records for both the house on Peel Lane (Marshall County) and the house in Ashland (Benton County). According to these documents, Stone had used 230 kilowatt hours of electricity a month at the rental house and 740 kilowatt hours of electricity a month at his Ashland house. Hale also presented various photographs of Stone's homes taken on different days. In one picture, Stone's mother's truck was parked at the Ashland (Benton County) house. In another picture, taken at noon on a weekday, no cars were parked in front of the home at 200 Johnson Park. In yet another picture, Stone's wife's car was parked at the Ashland house on a Friday during her lunch hour. Hale also presented a Facebook post in which Stone was pictured watching a football game with his grandson in Benton County.

¶11. Hale also sought to introduce into evidence the testimony of Wallace Majors, a "utility analyst." Majors purported to be an expert in utility usage and claimed that he was able to determine, based upon utility consumption, whether a dwelling was "occupied" or "unoccupied." After reading Majors's *curriculum vitae* and expert report, the trial court excluded him as an expert in utility consumption. In an order signed on June 17, 2015, the circuit court summarized Wallace's testimony thusly: "Mr. Majors holds himself out as an expert in energy conservation and utility rates and attempts to arbitrarily graft [the] terms . . . of 'occupied' and 'unoccupied' [on houses] . . . for . . . a determination of domicile." The

circuit court determined that Majors's opinion was without "a scientific basis" and that it was "based upon a number of assumptions that have no factual or scientifically tested basis." During the evidentiary hearing on June 18, 2015, Hale was allowed to proffer Majors's testimony. According to Majors, the rental house on Peel Lane (Marshall County) was "unoccupied" from October 2013 to July 2014, and the house in Ashland (Benton County) was "occupied" during that time.

¶12. Stone testified at the evidentiary hearing. He said under oath that he had no plans to return to the home in Ashland and that he intended to remain in Marshall County indefinitely.

¶13. The circuit court held that Stone had established a domicile in Marshall County in 2013 which has continued to the present. The circuit court found that:

> [C]ounting kilowatt hours cannot be the sole determination of where a person lives for purpose of establishing domicile. The place . . . a person designates as [his or her] home and take[s] such steps as filing homestead exemption, cancelling homestead exemption, giving the IRS the registration, registering to vote, and giving all appropriate parties the information establishes the domicile of a person for qualification to run for State Senate.

The circuit court further held that "Stone has provided absolute proof without any contingencies that he has met the requirements to run in Senate District 10." As an alternative basis supporting its decision, the circuit court found that, even if Stone had not established his domicile in District 10 by moving to Holly Springs, he would have established domicile in Marshall County through the doctrine of tacking.

¶14. Hale appealed the circuit court's decision to this Court. He presents three issues for this Court's consideration:

7

**I. Whether the circuit court committed manifest error in determining that Bill Stone moved his domicile to Marshall County.**

**II. Whether the circuit court erred in determining that Bill Stone had established his domicile in Marshall County through the doctrine of tacking.**

**III. Whether the circuit court erred in excluding the expert testimony of Wallace Majors, a "utility analyst."**

## DISCUSSION

**I. Whether the circuit court committed manifest error in determining that Bill Stone moved his domicile to Marshall County.**

¶15. We have held that "[i]n a candidate qualification challenge, the standard of review for questions of law is *de novo*." ***Young v. Stevens***, 968 So. 2d 1260, 1262 (Miss. 2007) (citing ***Ladner v. Necaise***, 771 So. 2d 353, 355 (Miss. 2000)). "[W]e review findings of fact by a trial judge sitting without a jury for manifest error, including whether the findings were the product of prejudice, bias, or fraud, or manifestly against the weight of the credible evidence." ***Id.*** at 1263 (citations omitted). We have held that "whether a candidate meets [the] residency requirement [to run for office] clearly involves questions of fact." ***Bryant v. Westbrooks***, 99 So. 3d 128, 134 (Miss. 2012).

¶16. Article 4, Section 42, of the Mississippi Constitution requires that a candidate for the Mississippi Senate be "an actual resident of the district or territory he may be chosen to represent for two years before his election." Miss. Const. art. 4, § 42. In Mississippi, for the purpose of elections, residency and domicile are synonymous. ***Hubbard v. McKey***, 193 So. 2d 129, 132 (Miss. 1966); ***Jones v. State***, 207 Miss. 208, 214, 42 So. 2d 123, 125 (1949).

8

The definition of domicile in this State is well established: "there must have been (1) an actual residence voluntarily established in said county, (2) with the *bona fide* intention of remaining there, if not permanently, at least indefinitely." ***Smith v. Smith***, 194 Miss. 431, 434, 12 So. 2d 428, 429 (1943).

¶17.   To prove his position that he had changed his domicile from Benton County to Marshall County, Stone provided an abundance of evidence. In October 2013, Stone rented a house at 305 Peel Lane in Holly Springs, the county seat of Marshall County, and he obtained utility service for the home. In July 2014, he bought a home at 200 Johnson Park in Holly Springs. Furthermore, he notified the Senate comptroller about his change of address, and the comptroller sent an e-mail to every member of the Senate informing them of the change. Further, he changed his address on his income tax filings to 305 Peel Lane, Holly Springs, Marshall County in 2014, and 200 Johnson Park, also in Holly Springs, Marshall County, in 2015. Moreover, he adjusted the mileage deduction he claimed on his federal income tax return to reflect his move to Marshall County. He registered to vote in Marshall County in April 2014. When they came due, he registered his car tags to Marshall County. He also altered major aspects of his life, including the church he attended, to Marshall County. Additionally, he resigned from his post as an Ashland volunteer firefighter and allowed his membership in the Ashland Civic Club to lapse. Significantly, he canceled his homestead exemption for his Ashland residence in Benton County, did not claim homestead exemption anywhere in 2014 while he was renting the house on Peel Street in Marshall County, and claimed homestead exemption in 2015 for his Johnson Park home in

Holly Springs, Marshall County. Finally, Stone testified under oath and without contradiction that he moved to Marshall County with the intent to remain there indefinitely.

¶18.    In *Hinds County Election Commission v. Brinston*, 671 So. 2d 667 (Miss. 1996), this Court held that "there is a strong but rebuttable presumption of residency in the county where the homestead exemption is filed." *Id.* at 669. This presumption exists "because of the benefit in the form of tax relief one receives by filing." *Id.*  Our statutory scheme for homestead exemptions does not require the resident to file a new application unless there has been an alteration in "the property description, ownership, use or occupancy since January 1 of the preceding year." Miss. Code Ann. § 27-33-31 (Rev. 2013).  Thus, a valid homestead exemption on a property persists unless the resident takes affirmative action to cancel or alter it.  Moreover, the Mississippi Code defines *homestead* as the dwelling "actually occupied as the primary home of a family group." Miss. Code Ann. § 27-33-19 (Rev. 2013).

¶19.    Although canceling one's homestead exemption does not give rise to a rebuttable presumption regarding his or her domicile, it can provide relevant circumstantial evidence of a person's intention to establish a new domicile, which should be considered along with the other relevant facts and circumstances of the case.  Here, the fact that Stone did not claim homestead exemption in 2014 should be considered in conjunction with his having rented the house on Peel Lane in Holly Springs, which, as a rental property, was ineligible for homestead exemption.  When he purchased the home at 200 Johnson Park in Holly Springs, Marshall County, Stone filed for homestead exemption in Marshall County.  From the point in time at which he filed for homestead exemption in Marshall County, Stone enjoyed a

rebuttable presumption that his domicile was in Marshall County. **Brinston**, 671 So. 2d at 699.

¶20.    Also, we cannot ignore the well established law of this State concerning the importance of one's intent in establishing his or her domicile.  This Court has held: "The foundation of domicile is intent." **Stubbs v. Stubbs**, 211 So. 2d 821, 825 (Miss. 1968). Stated differently, "[a]s a domicil[e] may be acquired by a longer or shorter residence, depending upon the circumstances of the case, its true basis and foundation must be the intention, the *quo animo* of evidence. The apparent or avowed intention of residence, not the manner of it, constitutes domicil[e]." **Hairston v. Hairston**, 27 Miss. 704, 719 (1854).  Moreover, "even where a party has two residences at different seasons of the year, that will be esteemed his domicil[e] which he himself selects, or describes, or deems to be his home, or which appears to be the centre of his affairs, or where he votes or exercises the rights and duties of a citizen." **Id.** (citation omitted).  This Court has held that "intention may be established by physical presence, declaration of intent, and all relevant facts and circumstances, and in this connection it has been held that *the declarations of the party himself are most important*." **Stubbs**, 211 So. 2d at 825 (emphasis added).  Our precedent dictates that Stone's statements of intention regarding his domicile are critical to our analysis, and thus we are bound to consider that Stone testified under oath that he intended to abandon his home in Ashland for the purpose of establishing a residence in Holly Springs and remaining there indefinitely. *See* **Young**, 968 So. 2d at 1262.

11

¶21. We have held that "[t]he exercise of political rights, admissions, declarations, the acts of purchasing a home and long-continued residency are circumstances indicative of his intention to abandon his domicile of origin and to establish a new domicile." ***Johnson v. Johnson***, 191 So. 2d 840, 842 (Miss. 1966) (citation omitted). Taking into consideration all of these factors, the circuit court did not err in determining that Stone's domicile has existed in Marshall County since October of 2013.

¶22. Hale argues that Stone is not domiciled in Marshall County, because "overwhelming proof shows that he actually resides elsewhere." ***Young***, 968 So. 2d at 1262. The appropriate standard of review for the circuit court's fact findings is "manifest error." ***Id.*** Hale argues that Stone could not have resided at the Peel Lane (Marshall County) house because he used only 230 kilowatt hours of electricity a month at the rental house and he used 740 kilowatt hours of electricity a month at his Ashland (Benton County) house. However, Stone provided a plausible explanation for this disparity in energy usage between the two homes. First, for most of the time that he resided at the Peel Lane home, Stone was in Jackson serving in the State Senate.[3] Furthermore, he and his wife lived only in the Peel Lane home's "mother-in-law suite," which was substantially smaller than the couple's home in Ashland.

_____

[3]    All public officers of this state who are required to, or who for official reasons, remove from the county of their actual household and residence to another county of this state for the purpose of performing the duties of their office shall be deemed in law in all respects to be householders and residents of the county from which they so remove, unless such officer elects to become an actual householder and resident of the county to which he removed for official causes.

Miss. Code Ann. § 25-1-61 (Rev. 2010).

The circuit court considered this testimony in addition to the kilowatt hours of electricity the couple consumed at the Peel Lane home and determined that "counting kilowatt hours cannot be the sole determination of where a person lives for the purpose of establishing domicile." Furthermore, Hale relies upon a smattering of other evidence including pictures taken of Stone's houses, a Facebook post, Stone having filled the pool at the Ashland house for the couple's grandchildren to swim there during the summer, Stone's wife having stayed at the Ashland house when Stone was in Jackson to perform his duties in the Legislature, and that Stone's wife occasionally having done laundry at the Ashland house. We reiterate that the circuit court based its decision on a multitude of facts that were probative of Stone's having transferred his domicile to Marshall County, including, *inter alia*, that Stone claimed homestead exemption in Marshall County, registered to vote in Marshall County, and testified under oath and without contradiction that he planned to remain at his home in Marshall County indefinitely. Not one of the facts upon which Hale relies concerning electricity usage or Stone's grandchildren swimming in the pool at the Ashland house renders the circuit court's decision to have been manifestly erroneous.

¶23. Hale contends that Stone may have purchased a new residence in Marshall County but that he had not established his domicile there because he did not provide "absolute proof" that he abandoned his domicile in Ashland. But there is no law which requires an electoral candidate to prove his or her domicile through "absolute proof." Section 23-15-299 of the Mississippi Code provides:

> If the proper executive committee finds that a candidate either (a) is not a qualified elector, (b) does not meet all qualifications to hold the office he seeks

13

and fails to provide absolute proof, subject to no contingencies, that he will meet the qualifications on or before the date of the general or special election at which he could be elected . . . then the name of such candidate shall not be placed upon the ballot.

Miss. Code Ann. § 23-15-299(7) (Rev. 2007). According to the plain language of the statute, the only criterion a candidate must show by "absolute proof" is that "he will meet the qualifications on or before the date of the . . . election." *Id.* The "absolute proof" burden of production does not extend to a candidate's underlying qualifications themselves.[4] Moreover, imposing a burden of "absolute proof" on a candidate's underlying qualifications for office is unprecedented and inconsistent with our case law. In ***Garner v. State of Mississippi Democratic Executive Committee***, 956 So. 2d 906 (Miss. 2007), this Court engaged in a bifurcated analysis to determine whether the candidate was qualified for office. First, the Court engaged in an ordinary analysis regarding the location of the candidate's domicile, employing a "manifest error" standard of review. ***Id.*** at 909-10. Then, the Court determined that the candidate had failed to provide "absolute proof" that he would meet the requirements to seek office. ***Id.*** at 911.

¶24. The dissent suggests that, for purpose of Section 23-15-299, a candidate's underlying qualifications are subsumed into a candidate's duty to meet those qualifications. Therefore,

---

[4] The burden of proof for proving one's domicile in the trial court is well established: "the party seeking to show that he has established a new domicile has the burden of producing evidence that the party has chosen and acquired a new domicile and further the burden of persuading the trier of fact that the evidence preponderates to that effect." ***Newman v. Newman***, 558 So. 2d 821, 825 (Miss. 1990). Stated otherwise, the burden of proof is the "preponderance of the evidence." *See **id.*** Despite the dissent's contrary claims, no circuit court has labored under the misapprehension, in an election contest or otherwise, that the burden of proof is "absolute proof." *See generally **Garner***, 956 So. 2d at 909.

14

notwithstanding the plain language of the statute, the "absolute proof" burden of production extends to the candidate's underlying qualifications. This interpretation belies the manifest error standard of review, which we heretofore have employed in every case in which a circuit court has made a determination regarding a candidate's domicile. *See Young*, 968 So. 2d at 1262 ("[W]e review findings of fact by a trial judge sitting without a jury for manifest error, including whether the findings were the product of prejudice, bias, or fraud, or manifestly against the weight of the credible evidence."); *Garner*, 956 So. 2d at 909 ("[W]e review findings of fact by a trial judge sitting without a jury for manifest error."); *Westbrooks*, 99 So. 3d at 131. Relying on *Black's Law Dictionary*, this Court has defined *manifest error* as an error that is "unmistakable, clear, plain, or indisputable." *Brennan v. Brennan*, 638 So.2d 1320, 1323 (Miss. 1994) (quoting *Black's Law Dictionary* 963 (6th ed. 1990)). By adopting an "absolute proof" burden of production, we would assume the task of scouring every record before the Court for any and all information which might contradict a circuit court's factual finding that a candidate was timely domiciled in a specific electoral district. This would amount to an inspection for errors that are far less conspicuous than those that are "unmistakable, clear, plain, or indisputable." *Id.* (quoting *Black's Law Dictionary* 963 (6th ed. 1990)).

¶25. Ultimately, the circuit court did not commit manifest error in holding that Stone had established his domicile in October 2013 in Holly Springs, Marshall County. Thus, Stone has provided "absolute proof, subject to no contingencies, that he will meet the qualifications

15

on or before the date of the general or special election at which he could be elected."Miss. Code Ann. § 23-15-299(7) (Rev. 2007).

> **II. Whether the circuit court erred in determining that Bill Stone had established his domicile in Marshall County through the doctrine of tacking.**

¶26. Because the circuit court did not commit manifest error in determining that Stone had established his domicile in Marshall County, the issue of whether Stone could become a domiciliary of Marshall County through the doctrine of tacking is moot. We reserve consideration of the impact that tacking may have on a candidate's residency for purpose of redistricting for another day. *See Cameron v. Mississippi Republican Party*, 890 So. 2d 836, 843 (Miss. 2004) ("[W]e will leave for another day the questions of whether Art. 4, § 42[,] requires a candidate to live in the district for at least two years immediately preceding the election and what effect, if any, redistricting has on residency requirements and tacking.").

> **III. Whether the circuit court erred in excluding the expert testimony of Wallace Majors, a "utility analyst."**

¶27. The admission of expert testimony is within the sound discretion of the trial judge. *Bishop v. State*, 982 So. 2d 371, 380 (Miss. 2008). This Court will not reverse a trial court's decision to exclude expert testimony unless it finds that the trial court's decision "was arbitrary and clearly erroneous, amounting to an abuse of discretion." *Id.* (citations omitted).

¶28. Mississippi Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education,

16

may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

¶29. In *Mississippi Transportation Commission v. McLemore*, 863 So. 2d 31 (Miss. 2003), we explained that trial courts should follow a modified, two-pronged *Daubert* test in determining whether expert testimony is admissible under Rule 702. Under this test, the trial court first must determine whether "the expert testimony is relevant." *McLemore*, 863 So. 2d at 38. Next, the court should decide whether "the proffered testimony is reliable." *Id.* Trial courts may consider additional factors, including, "[w]hether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; and whether the theory or technique enjoys general acceptance within a relevant scientific community." *Anderson v. State*, 62 So. 3d 927, 937 (Miss. 2011) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

¶30. In this case, Hale sought to present the testimony of Wallace Majors, a "utility expert." According to Majors, he could look at buildings' utility usage rates and determine whether they were "occupied" or "unoccupied." Majors provided no scientific basis for his opinions. Majors did not prove that there is an accepted community of utility experts who perform analyses similar to his or this type of analysis. Moreover, he did not prove that the methodology he used in reaching his opinions was accepted by any scientific community, and he did not demonstrate that his opinions were based upon dependable training or experience. In fact, Majors conceded that he had never before presented this type of opinion in circuit

court before. Ultimately, there is nothing in the record that Majors's opinions were anything other than speculation.

¶31. Hale argues that Majors based his opinions on utility records provided by the City of Ashland and records from the City of Holly Springs Utility Department. This may be true and the records upon which Majors based his opinion may be reliable. But even if Majors used reliable information in formulating his opinion, this is insufficient to render his methodology reliable, admissible, or sound.

¶32. Given that there is nothing in the record attesting to the reliability of Majors's methods or analysis, it cannot reasonably be argued that the trial court abused its discretion in excluding it from the evidentiary hearing.

## CONCLUSION

¶33. In sum, it was not manifest error for the trial court to determine that Stone had established his domicile in Marshall County in 2013. Stone has provided "absolute proof, subject to no contingencies, that he will meet the qualifications on or before the date of the general or special election at which he could be elected."Miss. Code Ann. § 23-15-299(7) (Rev. 2007). We therefore affirm the decision of the Circuit Court of the First Judicial District of Hinds County.

¶34. Given the necessity for a quick and final disposition of the instant appeal, under the Court's authority to suspend the rules pursuant to Rule 2(c) of the Mississippi Rules of Appellate Procedure, no Rule 40 Motion for Rehearing or Rule 27 Motion for

Reconsideration will be allowed, and this judgment is deemed final in all respects. The Clerk is directed to issue the mandate immediately.

¶35. **AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., CHANDLER, PIERCE AND KING, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND LAMAR, J.**

**COLEMAN, JUSTICE, DISSENTING:**

¶36. I would hold that Mississippi Code Section 23-15-299(7) requires prospective candidates to provide "absolute proof, subject to no contingencies" that they will meet all qualifications prior to the general election. Stone was required to produce absolute proof, at the time he filed to run for office, that he would have been be a two-year resident of Senate District 10 at the time of the November election. Because Stone did not meet this burden, I would reverse the circuit judge's decision to qualify him for the Senate District 10 race. Therefore, with respect, I dissent.

¶37. We review findings of fact "by a trial judge sitting without a jury for manifest error, including whether the findings were the product of prejudice, bias, or fraud, or manifestly against the weight of the credible evidence." *Young v. Stevens*, 968 So. 2d 1260, 1263 (¶ 4) (Miss. 2007) (citing *Boyd v. Tishomingo Cty. Democratic Exec. Comm.*, 912 So. 2d 124, 128 (¶ 4) (Miss. 2005)). "This Court leaves undisturbed a circuit court's findings following a bench trial unless the findings 'are manifestly wrong, clearly erroneous, or an *erroneous legal standard was applied*.'" *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (Miss. 2014) (emphasis added) (quoting *City of Jackson v. Sandifer*, 107 So. 3d 978, 983 (Miss. 2013)).

19

¶38. Article 4, Section 42 of the Mississippi Constitution of 1890 provides that, in order to be eligible for the office of state senator, a person must be a resident of the district which he or she will serve for a period of two years preceding the election.[5] *See also **Cameron v. Miss. Republican Party***, 890 So. 2d 836, 843 (¶ 19) (Miss. 2004). "It is the candidate's burden to prove that [he] meets the residency requirement." ***Bryant v. Westbrooks***, 99 So. 3d 128, 133 (¶ 14) (Miss. 2012) (citing ***Edwards v. Stevens***, 963 So. 2d 1108, 1110 (¶ 11) (Miss. 2007)).

¶39. The majority wholly ignores the pertinent part of Mississippi Code Section 23-15-299(7), which required Stone, in no uncertain terms, to "present[] *absolute proof* that he will, subject to no contingencies, meet *all qualifications* on or before the date of the general or special election at which he could be elected to office." Miss. Code Ann. § 23-15-299(7) (Rev. 2007) (emphasis added). It is undisputed, one would hope, that no less an authority than the Mississippi Constitution required Stone to be a two-year resident of District 10 before the date of the election. Miss. Const. art. 4, § 42. Without question, Stone was not a two-year resident of Holly Springs on the date he applied to run for Senate District 10, so the two-year residency requirement constituted a requirement he would meet in the future, yet before the election. Such qualifications under the statute must be shown by absolute proof. I cannot follow the logic of the majority that reaches a different conclusion. Rather

---

[5] Article 4, Section 42, Mississippi Constitution of 1890 provides "[n]o person shall be a senator who shall not have attained the age of twenty-five years, who shall not have been a qualified elector of the State four years, and who shall not be an *actual resident* of the district or territory he may be chosen to represent for two years before his election." (emphasis added).

20

than quoting the first part of Section 23-15-299(7), which I quote above and which seems to remove all doubt, the majority skips to the latter half of the statute. The part of the statute quoted by the majority reads, in full, as follows:

> If the proper executive committee finds that a candidate either (a) is not a qualified elector, (b) does not meet all qualifications to hold the office he seeks and fails to provide absolute proof, subject to no contingencies, that he will meet the qualifications on or before the date of the general or special election at which he could be elected, or (c) has been convicted of a felony as described in this subsection, and not pardoned, then the name of such candidate shall not be placed upon the ballot.

Miss. Code Ann. § 23-15-299(7) (Rev. 2007). By choosing to quote the latter half of the subsection 7, which directs the executive committee to refuse to place a potential candidate's name on the ballot should the determination mandated by the first half – relied upon in the instant dissent, above – the majority manages to avoid the legislative direction that the absolute proof requirement applies to "all qualifications" that will be met after filing to run and before the election itself.

¶40. The Mississippi Constitution establishes a two-year residency requirement as one of the "qualifications" candidates must meet; therefore, candidates whose qualifications are in question necessarily have to provide absolute proof with regard to each qualification. *See id.*; Miss. Const. art. 4, § 42. Thus, according to the legislature, Stone must "provide *absolute proof*, subject to no contingencies" that he became domiciled in what is now Senate District 10 two years before the general election in order to qualify there. Miss. Code Ann. § 23-15-299(7) (emphasis added).

21

¶41. The majority suggests that the only criterion a candidate must show by "absolute proof" is that "he will meet the qualifications on or before the date of the . . . election." In suggesting as much, the majority not only disregards Mississippi constitutional law and statutory authority, but also, the Court's precedent. In *Cameron*, the Court acknowledged that the absolute proof standard applies to candidates whose residency is in question. *Cameron*, 890 So. 2d at 841 (¶ 14). The *Cameron* Court wrote, "If the candidate 'fails to provide *absolute proof, subject to no contingencies,* that he will meet the qualifications . . . then the name of such candidate shall not be placed upon the ballot.'" *Id.* (quoting Miss. Code Ann. § 23-15-299(7)) (emphasis added). Further, the Court made it clear that the absolute standard applied to the individual qualifications when it gave the following example as to how the standard could be met with regard to the age qualification requirement:

> If, for example, Cameron's only impediment to qualifying for the senate race had been that he was only twenty-four years of age at the time of appearing before the Committee, and yet he would become twenty-five years of age prior to the general election, then certainly the mere presentation of his birth certificate would meet the statutory criteria, that, short of death or unforeseeable disability, there were no contingencies to his timely meeting all the qualifications to hold office.

*Id.* at 842 (¶ 18). The majority cites *Newman v. Newman*, 558 So. 2d 821, 825 (Miss. 1990), for the proposition that Stone needed only prove his change in domicile by a preponderance of the evidence. *Newman* was a divorce case, to which Section 23-15-299 would have had no application. Again, the Court in *Cameron* acknowledged that the absolute proof standard applies to prospective determinations of residency in the context of challenging a candidate's qualifications. *Cameron*, 890 So. 2d at 841 (¶ 14). The majority appears to assume, without

22

so writing, that the Legislature lacks the authority to set a different burden of proof. With respect to the majority, the Mississippi Constitution, the statutes at issue, and our precedent dictate we apply the "absolute proof" standard.

¶42.    Further, the majority of the evidence on which the majority relies is from 2014 and 2015, indicating that Stone may have become a resident of the district at some point *after* November 4, 2013. However, Stone has provided little evidence other than his own testimony – certainly not absolute proof – that he was a resident of the district *by* that date, which is the requirement.

¶43.    For example, while the majority and counsel for Stone are correct in citing ***Hinds County Election Commission v. Brinston***, 671 So. 2d 667 (Miss. 1996), for the general rule that there is a strong presumption that one's domicile and residence are where his homestead exemption is filed, the presumption is not applicable here, as Stone did not file a homestead exemption in Holly Springs until 2015 when he filed one for the home he purchased in July 2014 at 200 Johnson Park. If we assume for the sake of the argument that he became domiciled in Holly Springs upon filing his homestead exemption there, he still falls far short of establishing residency for two years prior to the election as he would not meet the requirement until 2017. Were the election two years from now, Stone might well be qualified to run in the Senate District 10 race based on the homestead exemption. However, the filing of a homestead exemption cannot retroactively prove domicile. The exemption was filed more than a year after the qualification date of November 2013. According to Stone himself, "[he] had no homestead in 2014 at any location." Stone further contends that the

23

cancelling of the homestead exemption at the Ashland property supports his abandoning domicile in Ashland. The Court "has never held that a decision to forego homestead negates the otherwise obvious establishment of a domicile." *Young*, 968 So. 2d at 1264. We should decline to do so today.

¶44. Furthermore, in relying on *Hairston v. Hairston*, 27 Miss. 704 (1854) – a case decided before the Mississippi Constitution was even adopted – the majority makes a candidate's intent the only factor in determining domicile. This flies in the face of our recent jurisprudence regarding domicile, where we have repeatedly determined domicile to be in a place other than where the candidate "intends" it to be. *See Garner v. State of Miss. Democratic Exec. Comm.*, 956 So. 2d 906, 910 (¶ 12) (Miss. 2007) (holding a candidate to be domiciled in Jackson where he intended to be domiciled in Covington County); *Young*, 968 So. 2d at 1264 (¶ 10) ("It is not enough that Young considers himself an official resident of Humphreys County. He must actually reside there permanently."); *Edwards*, 963 So. 2d at 1110 (¶ 12) ("We expressly reject Edwards' contention that he had actually lived in House District 48 . . . . unpersuasive is his argument that it was always his intention to return to House District 48."); *Cameron*, 890 So. 2d at 842 (¶ 17) ("[Cameron] may have intended . . . to establish residence within District 22, [but] he failed to show at the time of qualification for office with 'absolute proof' and 'without contingencies' that he would be a resident . . ."). Moreover, it defies logic to assume that a candidate, whose qualifications are being challenged, would ever declare their intention to be domiciled outside of the district; therefore, in making a candidate's intent the sole factor in determining domicile, the majority

24

renders the residency requirement in Article 4, Section 42 of the Mississippi Constitution moot.

¶45.   Finally, it must be remembered that, in the case *sub judice*, Stone was required to prove a *change* in domicile from Ashland to Holly Springs. He was required to provide absolute proof not only that he had moved to Holly Springs, but that his old home in Ashland had been abandoned as of November 2013. "*[T]he old domicile must be abandoned* without intent to return thereto." **Smith v. Deere**, 195 Miss. 502, 16 So. 2d 33, 34 (1943) (emphasis added) (internal citations omitted); *see also* **McLeod v. Allstate Ins. Co.**, 789 So. 2d 806, 810 (¶ 14) (Miss. 2001) ("Once established, a person's domicile remains intact 'absent a clear indication of intent to abandon the existing domicile and to establish another.'"). Stone admitted that his wife continued to live at the Ashland house during the legislative session after November 2013. He admitted that they continued to use the house for laundry and for spending time with their grandchildren.

¶46.   Hale submitted into evidence utility bills for Stone's rental house on Peel Lane and his Ashland home that show energy usage at the Ashland home actually *increased* in 2014 – the first year the Stones supposedly abandoned their Ashland residence – compared to 2013, when they indisputably lived in Ashland year-round.[4] Utility records for the home at 305 Peel Lane – to which Stone claims he moved in October 2013 – indicate that he did not actually live there as of November 4, 2013. In fact, the records indicate that he never actually

---

[4] The home at 47 Winborn Avenue in Ashland, Mississippi used 11,417 kilowatt hours in the 2012-13 period (when Stone acknowledges living there) and 11,652 kilowatt hours in the 2013-14 period (after Stone claims he had moved to the residence at 305 Peel Lane in Holly Springs).

lived there. For example, while Stone claims to have moved to the home on October 19-20, 2013, and resided there until July 2014, he used only 2,066 kilowatt hours during that time or, roughly 230 per month. More than half of the total amount of energy usage occurred in February 2014, when Stone admitted to letting a friend use the home. If Stone and his wife had abandoned Ashland for Peel Lane, one would expect energy bills closer to those of February 2014, rather than the low numbers of the other months.[5] Meanwhile, for the same period, the home in Ashland – that he claims to have abandoned for domicile purposes – used 6,662 kilowatt hours or, roughly 740 per month. Stone testified that he was in Jackson during the legislative session from January through April, but his explanation does not account for the time after October 2013.

¶47. I am not, as suggested by the majority, ignoring the manifest error standard of review. However, the manifest error standard applies only to the findings of fact made by the trial judge. *Young*, 968 So. 2d at 1263 (¶ 4). In the case *sub judice* the trial judge made errors of law that warrant reversal. In short, he did not apply the absolute proof standard to the question of whether Hale had abandoned his Ashland domicile, such that Holly Springs became his new domicile, in time to meet the constitutionally-imposed two-year residency requirement. Instead, the trial judge ruled from the bench, "By the time that the election

---

[5] The majority attempts to explain away the difference in utility usage by claiming that "[t]he 'mother-in-law suite' is less than half the size of Stone's Ashland home." Maj. Op. (¶ 4). In doing so, the majority misstates the facts of the case. While Stone claims the "mother-in-law suite" is around 1,000 sq. ft., county tax assessor data lists it at 1,664 sq. ft.. Meanwhile, the home at 47 Winborn Avenue in Ashland is listed at 1,333 sq. ft.; thus, even assuming arguendo that the "mother-in-law" wing is 1,000 sq. ft., this in no way can account for the marked difference in utility usage.

comes around . . . he will be a resident of the district that he will be elected to." In other words, the trial judge required Hale to prove only that he would be a resident by the time of the election, not that he will have been a resident for two years prior to the election.[6] In light of the evidence of the Stones' continued use of the Ashland home, I would hold that Stone failed to show by absolute proof his abandonment of the old domicile by November 2013. Our law makes abandonment of the old domicile a prerequisite for establishing the new. *Smith*, 16 So. 2d at 34. Further, as more fully discussed above, I cannot concur with the majority because in order to affirm the trial court, the majority overruns the absolute standard of persuasion altogether.

¶48. Under close review of the Mississippi Constitution, the statutes at issue, and our jurisprudence regarding domicile in election cases, I would hold that Stone is not qualified to run in the Senate District 10 race. Stone was required to provide absolute proof that he was a resident of Marshall County as of November 4, 2013. He failed to meet this burden. Therefore, I would reverse the circuit court's judgment qualifying Stone. Accordingly, I respectfully dissent.

**WALLER, C.J., AND LAMAR, J., JOIN THIS OPINION.**

---

[6] Although I am of the opinion that the trial court's ruling was based on an erroneous view of the law, even if the trial judge had ruled Stone established by absolute proof that he would be a two-year resident of Holly Springs by the time of the election, I would indeed hold he committed manifest error in light of the absolute proof standard. The trial judge never found the utility bills, discussed below, or the testimony sponsoring them to be inadmissible, unreliable, or incredible. Because competent evidence exists that contradicts Stone's claim to have abandoned his old domicile, it would have been manifest error for the trial judge to have found he provided absolute proof that he did so.