# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-EC-01008-SCT

*THOMAS F. CAMERON, III*

*v.*

*THE MISSISSIPPI REPUBLICAN PARTY AND ITS STATE EXECUTIVE COMMITTEE, AND JAMES HERRING, IN HIS OFFICIAL CAPACITY AS PARTY CHAIRMAN, EUGENE CLARKE, INDIVIDUALLY, AND STEPHEN NICK, INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2003 |
| TRIAL JUDGE: | HON. EDWARD E. PATTEN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIE GRIFFIN |
| | WILLIE L. BAILEY |
| | JOHNNIE E. WALLS, SR. |
| ATTORNEY FOR APPELLEES: | MICHAEL B. WALLACE |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 03/25/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Trapped in a legislatively-drawn senatorial district in the course of redistricting, and seemingly unable to run for elective office in the August 2003 legislative primaries due to residency requirements, Thomas F. Cameron, III, appeals to this Court from an adverse decision of the Circuit Court of the First Judicial District of Hinds County.  After meticulous review of the record and application of well-reasoned

statutory law as well as prior decisions of this Court, and because time was of the essence, we affirmed the circuit court's decision by order dated June 27, 2003, indicating this opinion would follow.

## FACTS AND PROCEDURAL HISTORY

¶2. In 1991, Thomas F. Cameron, III, was elected to the House of Representatives, taking office in January, 1992, as Representative of District 52, comprised of portions of Issaquena, Sharkey, and Washington Counties.[1] At the time this appeal was perfected in 2003, Cameron was a resident of the City of Greenville in Washington County.

¶3. Following the 2000 Census, the Legislature, during its 2002 session, passed Joint Resolution No. 201, redistricting the State Senate. The plan was submitted to the United States Department of Justice, which precleared the plan on June 17, 2002. Instead of seeking reelection as a Representative, Cameron decided to run for the Senate in the newly-drawn Senate District No. 22; however, Cameron's residence was situated in the newly drawn Senate District No. 12 approximately fifty feet outside the new Senate District No. 22.

¶4. Cameron resided in the same location from 1969 until 1983, and then moved his residence to another location where he remained until 1999; however, from 1969 until 1999, Cameron had maintained his residence in territory which was situated in both the old Senate District No. 22 and the new Senate District No. 22. From 1999 until at least May, 2003, Cameron had resided on South Main Street in the City of Greenville, which residence was in newly drawn Senate District No. 12.

---

[1]Cameron's term as District 52 Representative expired in January, 2004.

¶5.    On February 26, 2003, Cameron submitted his qualifying papers to the Mississippi Republican Party State Executive Committee (Committee), seeking the Republican nomination for new Senate District No. 22. Cameron entered into a contract to purchase a home within the new Senate District No. 22, with the "[c]losing to be on or before May 1, 2003" and "[p]ossession to be on or before June 1, 2003." There is no doubt that Cameron timely submitted the necessary paperwork for qualification prior to the March 1, 2003, deadline. The Committee met on March 6, 2003, to certify primary candidates for the Republican party. However, the determination of qualification for Cameron was deferred until a hearing on March 20, 2003, at which time the Committee refused to certify Cameron to seek election in the new Senate District No. 22 Republican Primary due to his failure to meet the residency requirements of the state constitution and applicable statutes.

¶6.    On March 31, 2003, Cameron filed in the Circuit Court of the First Judicial District of Hinds County a pleading entitled *Petition for Judicial Review of Decision of the State Executive Committee of the Mississippi Republican Party Refusing to Certify Petitioner as a Candidate for the Republican Nomination for State Senator, District 22 and for Writ of Mandamus*. Cameron stated in his petition that he was filing his pleadings pursuant to Miss. Code Ann. § 23-15-961(4) (Rev. 2001). In his petition, Cameron requested, inter alia, the issuance of a writ of mandamus ordering the State Executive Committee to place Cameron's name on the ballot for the August 5, 2003, primary election. Based on the filing of this petition, Presiding Justice Smith executed an order on April 2, 2003, appointing Chancellor Edward E. Patten, Jr. as special judge pursuant to Miss. Code

3

Ann. § 23-15-961(5) (Rev. 2001).[2] Chancellor Patten acted with dispatch in conducting a hearing on

April 22, 2003, and on May 2, 2003, he entered a judgment denying Cameron any relief under his petition

and dismissing the petition. In so doing, Chancellor Patten found:

1.      That Cameron was a resident of Senate District 22 until the new redistricting plan
        was precleared by the United States Department of Justice;

2.      The new redistricting plan went into effect upon preclearance by the United States
        Department of Justice on June 17, 2002 as set forth in the Senate Resolution;

3.      After preclearance Cameron's home and residence was located in the new Senate
        District 12;

4.      Cameron is purchasing a home in Senate District 22;

5.      Cameron does not meet the residency requirements to seek the position of Senator
        from District 22 since he will not have lived in Senate District 22 for two years
        immediately preceding the election;

6.      While Cameron lived in Senate District 22 prior to redistricting he now lives in
        Senate District 12 and cannot tack his former residency in Senate District 22 to
        his new residency in Senate District 22 after moving to that District for the purpose
        of meeting the two year residency requirement of Miss. Const., Art. 4, §42.
        Cameron could tack his residency to District 12 where his residence for over
        twenty (20) years is located, but he is not qualified to run in District 22.

Cameron, on April 23, 2003, submitted his Motion to Alter or Amend Findings of Fact and Conclusions

of Law and Judgment pursuant to Miss. R. Civ. P. 59.[3] On May 7, 2003, Chancellor Patten entered his

---

[2]Even though the petition is by statute filed in circuit court, Miss. Code Ann. § 23-15-961(5) provides that the Chief Justice or other justice of this Court may appoint either a chancery judge or a circuit judge.

[3]Chancellor Patten evidently issued an oral bench ruling on April 22, 2003, at the conclusion of the hearing, because Cameron's Miss. R. Civ. P. 59 motion is dated April 23, 2003. There is no filing date stamped on the motion.

4

Order Granting Motion to Alter or Amend Findings of Fact and Conclusions of Law, as well as the Judgment consistent therewith.

¶7.    Because Miss. Code Ann. § 23-15-961 envisions that election matters will receive expedited judicial review, an appeal to the Supreme Court is based on a bill of exceptions as opposed to a court reporter's transcript. Miss. Code Ann. § 23-15-961(6) (Rev. 2001). Accordingly, on May 12, 2003 (the third business day after entry of the Order), the bill of exceptions, signed by Chancellor Patten, was filed with this Court.

¶8.    Cameron has presented five issues for review:

   1.    Whether Art. 4, § 42 of the Miss. Constitution requires Cameron to live in Senate District 22 for at least two years immediately preceding the election.

   2.    Whether the Senate has exclusive authority to hear challenges to the qualifications of the candidates who seek party nominations when political parties and/or persons fail to act within the time allowed by § 23-51-961.

   3.    Whether the State Executive Committee of the Mississippi Republican Party had authority to conduct a hearing on March 20, 2003.

   4.    Whether the trial court erred by holding that no petition was required to be filed and before the State Executive Committee could rule on Cameron's qualifications.

   5.    Whether the trial court erred in conducting a de novo hearing without requiring a petition.

Issues two through five relate to jurisdiction, which was addressed by then-Presiding Justice McRae in his dissent to this Court's June 27, 2003, Order. We thus consolidate these jurisdiction related issues and first address the issue of jurisdiction.

## DISCUSSION

¶9.     Both Cameron and the State Executive Committee agree that Art. 3, § 38 of the Mississippi

Constitution requires that "[e]ach house shall elect its own officers, and shall judge of the qualifications,

return and election of its own members." In two cases where we have interpreted § 38, we have deferred

to the Legislature on qualification issues. *See **Esco v. Blackmon***, 692 So.2d 74 (Miss. 1997) (holding

that, although not the only forum, the House of Representatives was a proper forum for adjudication of

election contest); ***Foster v. Harden***, 536 So.2d 905 (Miss. 1988) (holding circuit court did not have

jurisdiction in case brought during run-off elections regarding qualifications of senatorial candidate already

certified by Democratic Executive Committee). However, in both of these cases, the petitions were filed

<u>after</u> the elections.

¶10.    The case sub judice concerns a determination by the Mississippi Republican Party and its State

Executive Committee as to the qualifications of a primary candidate. Under Miss. Code Ann. § 23-15-

299(7) (Supp. 2003), the Legislature has conferred the duty to determine qualifications of candidates to

the appropriate executive committees. Miss. Code Ann. § 23-15-299(7) provides:

> Upon receipt of the proper fee and all necessary information, the proper executive committee *shall* then determine whether each candidate is a qualified elector of the state, state district, county or county district which they seek to serve, and whether each candidate meets all other qualifications to hold the office he is seeking or presents absolute proof that he will, *subject to no contingencies*, meet all qualifications on or before the date of the general or special election at which he could be elected to office. . . . *If the proper executive committee finds that a candidate either* (a) is not a qualified elector, (b) *does not meet all qualifications to hold the office he seeks and fails to provide absolute proof, subject to no contingencies, that he will meet the qualifications on or before the date of the general or special election at which he could be elected,* or (c) has been convicted of a felony as described in this subsection, and not pardoned, *then the name of such candidate shall not be placed upon the ballot*.

(emphasis added).

6

¶11.    Cameron submits that we should focus on the Committee's failure to conform its actions with the provisions of Miss. Code Ann. § 23-15-961 and, in essence, ignore the provisions of Miss. Code Ann. § 23-15-299. Cameron argues that since there was no petition timely filed by a contesting party thereby contesting his qualifications pursuant to Miss. Code Ann. § 23-15-961, he was certified to run in the Republican primary by default. Cameron's interpretation of the statutory mandate it would completely nullify the provisions of Miss. Code Ann. § 23-15-299(7) which require the appropriate party executive committees to make a pre-election determination that their candidates are qualified according to law. Cameron contends that a party executive committee can act only on a petition to contest a candidate's qualifications and if the committee wants to sua sponte challenge a candidate's qualifications, the committee itself must file a petition to challenge the candidate's qualifications. In other words, according to Cameron's theory, a party executive committee would have to "petition itself." A person's pre-election or post-election *challenge* of a candidate's qualifications under the appropriate statutes is an altogether different creature than a party executive committee's pre-election *inquiry* to assure that its candidates are lawfully qualified to even run in the party primary.

¶12.    The deadline for qualifying was March 1, 2003. After the State Executive Committee failed to qualify Cameron as a candidate in the primary election, Cameron petitioned the circuit court for relief. The circuit court ruled that it had jurisdiction under Miss. Code, § 23-15-961(4), which provides that "any person aggrieved by the action or inaction of the appropriate executive committee may file a petition for judicial review to the circuit court ..." Section 23-15-961(5) provides that the court shall review the decision of the executive committee de novo. Pursuant to § 23-15-961(6), this Court has "authority to grant such relief as is appropriate under the circumstances." Having previously found that we had

jurisdiction to hear this election case and that we were under a duty to make a decision at the earliest possible date, we issued an order on June 23, 2003, affirming the circuit court's decision and indicated that this opinion would follow.

¶13.    Both the State Executive Committee and the circuit court found that Cameron did not meet the qualifications required for a Senator. The qualifications for a Senator are set forth in the Mississippi Constitution, Art. 4, § 42, which provides:

> No person shall be a senator who shall not have attained the age of twenty-five years, who shall not have been a qualified elector of the state four years, and who shall not be an actual resident of the district or territory he may be chosen to represent for two years before his election. The seat of a senator shall be vacated upon his removal from the district from which he was elected.

¶14.    Miss. Code Ann. § 23-15-299(7) requires the executive committee to determine whether each candidate meets "all other qualifications to hold the office he is seeking or presents *absolute proof* that he will, *subject to no contingencies*, meet all qualifications on or before the date of the general or special election at which he could be elected to office." (emphasis added). If the candidate "fails to provide *absolute proof*, *subject to no contingencies*, that he will meet the qualifications on or before the date of the general or special election at which he could be elected............then the name of such candidate shall not be placed upon the ballot." *Id*. (emphasis added). Cameron cannot meet this statutory provision.

¶15.    We have previously addressed residency issues in election contests. In *Smith v. Deere*, 195 Miss. 502, 16 So. 2d 33 (1943), this Court addressed the contest of a voter in a supervisor's election and the question of whether the voter was a qualified elector under the then effective constitutional requirement that one be a resident of the state for two years in order to vote. The voter resided in Louisiana until less

8

than two years prior to the election in question, at which time he moved into Walthall County, Mississippi. The evidence showed that the voter decided to move into the state the preceding summer and purchased a tract of land on which to build a home and business. Equating residence with domicile for political purposes, the Court held that a domicile continues until another is acquired and does not change until the person removes himself to the new locality with the intent to remain there and abandons the old domicile without intent to return to it. *Id.* 504-05, 16 So. 2d at 34. Also, *Jones v. State ex rel. McFarland*, 207 Miss. 208, 42 So. 2d 123 (1949), held that one who for many years maintained a home outside the town where his wife and children resided and on which he claimed homestead exemption did not establish residence within the town for the purpose of holding the office of town marshal by keeping a homemade trailer within the town, in which he slept.

¶16.     In the end, our decision today is guided by our recent decision in *Grist v. Farese*, 860 So.2d 1182 (Miss. 2003). In *Grist*, a chancellor who had several complaints pending before the Mississippi Commission on Judicial Performance (Commission), entered into a Memorandum of Understanding wherein he agreed, inter alia, to not seek judicial or legislative office in the future. When Grist qualified to seek election to the office of District Attorney in his home district, certain petitioners sought to have Grist disqualified as a district attorney candidate, claiming inter alia, that the office of district attorney was a "quasi-judicial office," and that Grist did not meet the statutory qualifications for the office because he was not a practicing lawyer. While the circuit court found that the office of district attorney was a quasi-judicial office, thus placing Grist in violation of the Memorandum of Understanding, the circuit court also found that pursuant to Miss. Code Ann. § 23-15-299(7), the issue of whether Grist was a practicing attorney was premature because Grist was required only to be a practicing attorney at the time of his election, not at the

9

time of qualifying. In making this decision, the circuit court relied in part on our decision in *State ex rel. Plunkett v. Miller*, 162 Miss. 149, 137 So. 737 (1931). However, we stated:

> The circuit court's interpretation of *Plunkett* would negate the statutory process of qualification as provided in § 23-15-299. The [petitioners] cite *Hinds County Election Commission v. Brinston*, 671 So.2d 667 (Miss. 1996), where the residency requirement in the circuit clerk's election was considered and decided before the election. We find that the procedure provided in § 23-15-299(7) is controlling in this case. The circuit court's finding that Grist was not a practicing attorney is supported by the testimony at the hearing, as previously set out in this opinion, as is the finding that Grist did not supply absolute proof that he would meet that qualification of the office of district attorney on or before the date of the general election.

*Grist*, 860 So.2d at 1187.

¶17. Here, Cameron admitted both before the Committee and the circuit court that as of the times of his appearances, he was not a resident of new Senate District No. 22 but that he was in the process of moving into the new district as evidenced by the real estate contract. Although Cameron, at the time of the hearings, may have intended in good faith to purchase the home for which he had contracted in order to establish residence within District 22, he failed to show at the time of qualification for office with "absolute proof" and "without contingencies" that he would be a resident within the district at the time of the election. The record is absolutely devoid of any evidence that Cameron had or would meet this statutory requirement "subject to no contingencies." The purpose of the law is to provide the party executive committees and our election officials, such as our circuit clerks, adequate time to determine who the candidates shall be and to print the ballots accordingly.

¶18. If, for example, Cameron's only impediment to qualifying for the senate race had been that he was only twenty-four years of age at the time of appearing before the Committee, and yet he would become

10

twenty-five years of age prior to the general election, then certainly the mere presentation of his birth certificate would meet the statutory criteria, that, short of death or unforeseeable disability, there were no contingencies to his timely meeting all the qualifications to hold office.

¶19.     Rather, Cameron's argument focuses on the circuit court's finding that he may not tack his former residences to fulfill the residency requirement found in Art. 4, § 42. This Court has never directly addressed the question of how to deal with potential candidates who were residents of a district but on the effective date of redistricting find themselves living outside of the district. However, based upon the foregoing analysis, we need not make this determination today. Because Cameron has failed to show at the time of qualification for office with "absolute proof" and "without contingencies" that he would be a resident within the district at the time of the election, we will leave for another day the questions of whether Art. 4, § 42 requires a candidate to live in the district for at least two years immediately preceding the election and what effect, if any, redistricting has on residency requirements and tacking.

## CONCLUSION

¶20.     The Circuit Court of the First Judicial District of Hinds County did not err in concluding that Cameron was not a resident of Senate District 22 and was not qualified to run in the Republican primary for state senator from that district. Therefore, we affirm the circuit court's judgment.

¶21.     **AFFIRMED.**

**PITTMAN, C.J., SMITH AND WALLER, P.JJ., COBB AND DICKINSON, JJ., CONCUR. EASLEY J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

11