COLEMAN, Justice,
dissenting:
• ¶ 36. I would hold that Mississippi Code Section 23-15-299(7) requires prospective candidates to provide “absolute proof, subject to no contingencies’.’ that they will meet all qualifications prior to the general election. Stone was required to produce absolute proof, at the time he filed to run for office, that he would have been be a two-year resident of Senate District 10 at the time of the November election. Because Stone did not meet this burden, I would reverse the circuit judge’s decision to qualify him for the Senate District 10 race. Therefore, with respect, I dissent.
¶ 37. We review findings of fact “by a trial judge sitting without a jury for manifest error, including whether the findings were the product of prejudice, bias, or fraud, or manifestly against the weight of the credible evidence.” Young v. Stevens, 968 So.2d 1260, 1263 (¶ 4) (Miss.2007) (cit *957 ing Boyd v. Tishomingo Cty. Democratic Exec. Comm., 912 So.2d 124, 128 (¶4) (Miss.2005)). “This Court leaves undisturbed a circuit court’s findings following a bench trial unless the findings ‘are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.’ ” City of Jackson v. Lewis, 153 So.3d 689, 693 (Miss.2014) (emphasis added) (quoting City of Jackson v. Sandifer, 107 So.3d 978, 983 (Miss.2013)).
¶ 38. Article 4, Section 42 of the Mississippi Constitution of 1890 provides that, in order to be eligible for the office of state senator, a person must be a resident of the district which he or she will serve for a period of two years preceding the election.[5] See also Cameron v. Miss. Republican Party, 890 So.2d 836, 843 (¶ 19) (Miss.2004). “It is the candidate’s burden to prove that [he] meets the residency requirement.” Bryant v. Westbrooks, 99 So.3d 128, 133 (¶ 14) (Miss.2012) (citing Edwards v. Stevens, 963 So.2d 1108, 1110 (¶ 11) (Miss.2007)).
¶ 39. The majority wholly ignores the pertinent part of Mississippi Code Section 23-15-299(7), which required Stone, in no uncertain terms, to “present[] absolute proof that he will, subject to no contingencies, meet all qualifications on or before the date of the general or special election at which he could be elected to office.” Miss.Code Ann. § 23-15-299(7) (Rev.2007) (emphasis added). It is undisputed, one would hope, that no less an authority than the Mississippi Constitution required Stone to be a two-year resident of District 10 before the date of the election. Miss. Const. art. 4, § 42. Without question, Stone was not a two-year resident of Holly Springs on the date he applied to run for Senate District 10, so the two-year residency requirement constituted a requirement he would meet in the future, yet before the election. Such qualifications under the statute must be shown by absolute proof. I cannot follow the logic of the majority that reaches a different conclusion. Rather than quoting the first part of Section 23-15-299(7), which I quote above and which seems to remove all doubt, the majority skips to the latter half of the statute. The part of the statute quoted by the majority reads, in full, as follows:
If the proper executive committee finds that a candidate either (a) is not a qualified elector, (b) does not meet all qualifications to hold the office he seeks and fails to provide absolute proof, subject to no contingencies, that he will meet the qualifications on or before the date of the general or special election at which he could be elected, or (c) has been convicted of a felony as described in this subsection, and not pardoned, then the name of such candidate shall not be placed upon the ballot.
Miss.Code Ann. § 23-15-299(7) (Rev.2007). By choosing to quote the latter half of the subsection 7, which directs the executive committee to refuse to place a potential candidate’s name on the ballot should the determination mandated by the first half-relied upon in the instant dissent, above— the majority manages to avoid the legislative direction that the absolute proof requirement applies to “all qualifications” that will be met after filing to run and before the election itself.
¶40. The Mississippi Constitution establishes a two-year residency require *958 ment as one of the “qualifications” candidates must meet; therefore, candidates whose qualifications are in question necessarily have to provide absolute proof with regard to each qualification. See id.; Miss. Const, art. 4, § 42. Thus, according to the legislature, Stone must “provide absolute proof, subject to no contingencies” that he became domiciled in what is now Senate District 10 two years before the general election in order to qualify there. Miss.Code Ann. § 23-15-299(7) (emphasis added).
¶ 41. The majority suggests that the only criterion a candidate must show by “absolute proof’ is that “he will meet the qualifications on or before the date of the ... election.” In suggesting as much, the majority not only disregards Mississippi constitutional law and statutory authority, but also, the Court’s precedent. In Cameron, the Court acknowledged that the absolute proof standard applies to candidates whose residency is in question. Cameron, 890 So.2d at 841 (¶ 14). The Cameron Court wrote, “If the candidate ‘fails to provide absolute proof, subject to no contingencies, that he will meet the qualifications ... then the name of such candidate shall not be placed upon the ballot.’ ” Id. (quoting Miss.Code Ann. § 23-15-299(7)) (emphasis added). Further, the Court made it clear that the absolute standard applied to the individual qualifications when it gave the following example as to how the standard could be met with regard to the age qualification requirement:
If, for example, Cameron’s only impediment to qualifying for the senate race had been that he was only twenty-four years of age at the time of appearing before the Committee, and yet he would become twenty-five years of age prior to the general election, then certainly the mere presentation of his birth certificate would meet the statutory criteria, that, short of death or unforeseeable disability, there were no contingencies to his timely meeting all the qualifications to hold office.
Id. at 842 (¶ 18). The majority cites Newman v. Newman, 558 So.2d 821, 825 (Miss.1990), for the proposition that Stone needed only prove his change in domicile by a preponderance of the evidence. Newman was a divorce case, to which Section 23-15-299 would have had no application. Again, the Court in Cameron acknowledged that the absolute proof standard applies to prospective determinations of residency in the context of challenging a candidate’s qualifications. Cameron, 890 So.2d at 841 (¶ 14). The majority appears to assume, without so writing, that the Legislature lacks the authority to set a different burden of proof. With respect to the majority, the Mississippi Constitution, the statutes at issue, and our precedent dictate we apply the “absolute proof’ standard.
¶42. Further, the majority of the evidence on which the majority relies is from 2014 and 2015, indicating that Stone may have become a resident of the district at some point after November 4, 2013. However, Stone has provided little evidence other than his own testimony — certainly not absolute proof — that he was a resident of the district by that date, which is the requirement.
¶ 43. For example, while the majority and counsel for Stone are correct in citing Hinds County Election Commission v. Brinston, 671 So.2d 667 (Miss.1996), for the general rule that there is a strong presumption that one’s domicile and residence are where his homestead exemption is filed, the presumption is not applicable here, as Stone did not file a homestead exemption in Holly Springs until 2015 when he filed one for the home he purchased in July 2014 at 200 Johnson Park. *959 If we assume for the sake of the argument that he became domiciled in Holly Springs upon filing his homestead exemption there, he still falls far short of establishing residency for two years prior to the election as he would not meet the requirement until 2017. Were the election two years from now, Stone might well be qualified to run in the Senate District 10 race based on the homestead exemption. However, the filing of a homestead exemption cannot retroactively prove domicile. The exemption was filed more than a year after the qualification date of November 2013. According to Stone himself, “[he] had no homestead in 2014 at any location.” Stone further contends that the cancelling of the homestead exemption at the Ashland property supports his abandoning domicile in Ashland. The Court “has never held that a decision to forego homestead negates the otherwise obvious establishment of a domicile.” Young, 968 So.2d at 1264. We should decline to do so today.
¶ 44. Furthermore, in relying on Hairston v. Hairston, 27 Miss. 704 (1854) — a case decided before the Mississippi Constitution was even adopted — the majority makes a candidate’s intent the only factor in determining domicile. This flies in the face of our recent jurisprudence regarding domicile, where we have repeatedly determined domicile to be in a place other than where the candidate “intends” it to be. See Garner v. State of Miss. Democratic Exec. Comm., 956 So.2d 906, 910 (¶ 12) (Miss.2007) (holding a candidate to be domiciled in Jackson where he intended to be domiciled in Covington County); Young, 968 So.2d at 1264 (¶ 10) (“It is not enough that Young considers himself an official resident of Humphreys County. He must actually reside there permanently.”); Edwards, 963 So.2d at 1110 (¶ 12) (‘We expressly reject Edwards’ contention that he had actually lived in House District 48 .... unpersuasive is his argument that it was always his intention to return to House District 48.”); Cameron, 890 So.2d at 842 (¶ 17) (“[Cameron] may have intended ... to establish residence within District 22, [but] he failed to show at the time of qualification for office with ‘absolute proof and ‘without contingencies’ that he would be a resident ... ”). Moreover, it defies logic to assume that a candidate, whose qualifications are being challenged, would ever declare their intention to be domiciled outside of the district; therefore, in making a candidate’s intent the sole factor in determining domicile, the majority renders the residency requirement in Article 4, Section 42 of the Mississippi Constitution moot.
¶ 45. Finally, it must be remembered that, in the case sub judice, Stone was required to prove a change in domicile from Ashland to Holly Springs. He was required to provide absolute proof not only that he had moved to Holly Springs, but that his old home in Ashland had been abandoned as of November 2013. “[T]he old domicile must be abandoned without intent to return thereto.” Smith v. Deere, 195 Miss. 502, 16 So.2d 33, 34 (1943) (emphasis added) (internal citations omitted); see also McLeod v. Allstate Ins. Co., 789 So.2d 806, 810 (¶ 14) (Miss.2001) (“Once established, a person’s domicile remains intact ‘absent a clear indication of intent to abandon the existing domicile and to establish another.’ ”). Stone admitted that his wife continued to live at the Ashland house during the legislative session after November 2013. He admitted that they continued to use the house for laundry and for spending time with their grandchildren.
¶ 46. Hale submitted into evidence utility bills for Stone’s rental house on Peel Lane and his Ashland home that show energy usage at the Ashland home actually increased in 2014 — the first year the *960 Stones supposedly abandoned their Ash-land residence — compared to 2013, when they indisputably lived in Ashland year-round.[4] Utility records for the home at 305 Peel Lane — to which Stone claims he moved in October 2013 — indicate that he did not actually live there as of November 4, 2013. In fact, the records indicate that he never actually lived there. For example, while Stone claims to have moved to the home on October 19-20, 2013, and resided there until July 2014, he used only 2,066 kilowatt hours during that time or, roughly 230 per month. More than half of the total amount of energy usage occurred in February 2014, when Stone admitted to letting a friend- use the home. If Stone and his wife had abandoned Ashland for Peel Lane, one would expect energy bills closer to those of February 2014, rather than the low numbers of the other months.[5] Meanwhile, for the same period, the home in Ashland — that he claims to have abandoned for domicile purposes— used 6,662 kilowatt hours or, roughly 740 per month. Stone testified that he was in Jackson during the legislative session from January through April, but his explanation does not account for the time after October 2013.
¶ 47. I am not, as suggested by the majority, ignoring the manifest error standard of review. However, the manifest error standard applies only to the findings of fact made by the trial judge. Young, 968 So.2d at 1263 (¶ 4). In the case sub judice the trial’judge made errors of law that warrant reversal. In short, he did not apply the absolute proof standard to the question of whether Hale had abandoned his Ashland domicile, such that Holly Springs became his new domicile, in time to meet the constitutionally-imposed two-year residency requirement. Instead, the trial judge ruled from the bench, “By the time that the election comes around ... he will be a resident of the district that he will be elected to.” In other words, the trial judge required Hale to prove only that he would be a resident by the time of the election, not that he will have been a resident for two years prior to the election.[6] In light of the evidence of the Stones’ continued use of the Ashland home, I would hold that Stone failed to show by absolute proof his abandonment of the old domicile by November 2013. Our law makes abandonment of the old domicile a prerequisite for establishing the new. *961 Smith, 16 So.2d at 34. Further, as more fully discussed above, I cannot concur with the majority because in order to affirm the trial court, the majority overruns the absolute standard of persuasion altogether.
¶ 48. Under close review of the Mississippi Constitution, the statutes at issue, and our jurisprudence regarding domicile in election cases, I would hold that Stone is not qualified to run in the Senate District 10 race. Stone was required to provide absolute proof that he was a resident of Marshall County as of November 4, 2013. He failed to meet this burden. Therefore, ■I would reverse the circuit court’s judgment qualifying Stone. Accordingly, I respectfully dissent.
WALLER, C.J., AND LAMAR, J., JOIN THIS OPINION.

. Article 4, Section 42, Mississippi Constitution of 1890 provides ''[n]o person shall be a senator who shall not have attained the age of twenty-five years, who shall not have been a qualified elector of the State four years, and who shall not be an actual resident of the district or territory he may be chosen to represent for two years before his election.” (emphasis added).

. The home at 47 Winborn Avenue in Ash-land, Mississippi used 11,417 kilowatt hours in the 2012-13 period (when Stone acknowledges living there) and 11,652 kilowatt hours in the 2013-14 period (after Stone claims he ■had moved to the residence at 305 Peel Lane in Holly Springs).

. The majority attempts to explain away the difference in utility usage by claiming that “[t]he 'mother-in-law suite’ is less than half the size of Stone’s Ashland home.” Maj. Op. (¶ 4). In doing so, the majority misstates the facts of the case. While Stone claims the "mother-in-law suite” is around 1,000 sq. ft., county tax assessor data lists it at 1,664 sq. ft. Meanwhile, the home at 47 Winborn Avenue in Ashland is listed at 1,333 sq. ft.; thus, even assuming arguendo that the "mother-in-law” wing is 1,000 sq. ft., this in no way can account for the marked difference in utility usage.

.Although I am of the opinion that the trial court’s ruling was based on an erroneous view of the law, even if the trial judge had ruled Stone established by absolute proof that he would be a two-year resident of Holly Springs by the time of the election, I would indeed hold he committed manifest error in light of the absolute proof standard. The trial judge never found the utility bills, discussed below, or the testimony sponsoring them to be inadmissible, unreliable, or incredible. Because competent evidence exists that contradicts Stone’s claim to have abandoned his old domicile, it would have been manifest error for the trial judge to have found he provided absolute proof that he did so.