# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-EC-00305-SCT

*SCOTTY MEREDITH*

*v.*

*CLARKSDALE DEMOCRATIC EXECUTIVE*
*COMMITTEE AND MAYOR CHUCK ESPY*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/23/2021 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| TRIAL COURT ATTORNEYS: | JAMIE F. LEE |
| | RALPH CHAPMAN |
| | WILLIAM SEALE |
| | AMANDA J. TOLLISON |
| | DEONDREY RASHAD RUSSELL |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMIE F. LEE |
| ATTORNEYS FOR APPELLEES: | AMANDA J. TOLLISON |
| | DEONDREY R. RUSSELL |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 06/09/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Scotty Meredith ran for mayor of Clarksdale, Mississippi. The mayor at the time, Chuck Espy, challenged whether Meredith was qualified to run for mayor on the basis that Meredith was not a Clarksdale resident. The Clarksdale Municipal Democratic Executive Committee found that Meredith was not a resident of Clarksdale and was not qualified to run for mayor.  The trial court, similarly, found that Meredith was unqualified to run for mayor. Meredith appealed the judgment of the Circuit Court of Coahoma County.

¶2. Under Mississippi Code Section 23-15-300, if a candidate fails to prove in their qualifying information that they meet the two-year residency requirement, the candidate must prove by absolute proof that they meet or will meet the residency requirement on or before the applicable deadline. Finding no error, the judgment of the Coahoma County Circuit Court is affirmed.

**FACTS**

¶3. On January 4, 2021, Meredith filed the necessary papers to qualify to run for mayor of Clarksdale. Meredith's qualifying information identified his residence as 1128 Park Circle, Clarksdale, Mississippi. This address was his mother-in-law's residence.

¶4. On February 8, 2021, three days after the qualifying deadline, Espy challenged whether Meredith was in fact qualified to run for mayor. Espy claimed that Meredith was not a resident of Clarksdale. Instead, Espy claimed that Meredith actually resided at his lake house, which was located at 116 Meredith Road, Alligator, Mississippi, and is not within the Clarksdale city limits.

¶5. On February 16, 2021, Meredith responded to Espy's petition and asserted that he actually resides at 314 E. 2nd Street, Clarksdale, Mississippi. This is the address of the funeral home that Meredith owns and operates. Meredith argued that he had an apartment at the funeral home. Meredith admitted that he did not live with his mother-in-law and effectively abandoned the claim in the qualifying papers that he resided at his mother-in-law's address.

¶6. The Clarksdale Municipal Democratic Executive Committee held a hearing on

February 16, 2021, to consider Meredith's qualifications and Espy's challenge—i.e., to determine Meredith's actual residency. The next day, the committee unanimously determined that Meredith did not meet the residency requirements and that he was not qualified as a candidate for mayor in the Democratic Primary scheduled for April 6, 2021. The committee sent Meredith a letter that provided that:

> [N]o proof was submitted during the hearing that you resided at [your mother-in-law's address]. You signed a Qualifying Statement of Intent as a candidate for the party nomination of Mayor which listed your residential address as [your mother-in-law's address]. . . .
>
> Though your response, pictures, and witnesses focused on [the funeral home apartment], no absolute proof or documentation was submitted to the Executive Committee effectively establishing your residency at [the funeral home apartment] for the required two (2) years prior to the General Election. However, proof submitted by the petitioner, indicates that you reside at [the lake house], for at least a portion of the prior two (2) years including homestead exemption. In addition, testimony indicated continued use of the . . . [lake house].

¶7.    On February 22, 2021, Meredith appealed the committee's decision under Mississippi Code Section 23-15-961 (Rev. 2019). A trial was held on March 19, 2021, before a specially appointed circuit judge.

¶8.    At trial, Meredith conceded that he did not live and has never lived at his mother-in-law's address. Meredith testified that he used his mother-in-law's address on his mayoral qualifying form because he was previously told, in 2019, when he ran for coroner, that he could not use the funeral home apartment address.

¶9.    Meredith testified that, in 2019, when he ran for coroner, he used the funeral home apartment address on his qualifying form. He further testified that Ray Sykes, chairman of

the Democratic Executive Committee, told Meredith that he could not put his funeral home apartment address on the form since it was a business address.

¶10.    Sykes testified and confirmed that he told Meredith that he could not use the funeral home apartment address on his qualifying form for coroner. Sykes said that he did not tell Meredith which address to use on his qualifying form, but he said that it had to be different. After Meredith's conversation with Sykes, Meredith changed the address on his coroner qualifying form.

¶11.    Meredith testified that he and his wife moved to the lake house in 2000. Meredith testified that he still owns the lake house, pays utilities, and files homestead exemption on the lake house. Meredith's vehicles are registered using the lake house address. The lake house is also listed as Meredith's residence on his driver's license. Meredith has not updated his driver's license because he did not know that he had to update his license when he moved.

¶12.    Meredith then testified that, after severe flooding in March 2018, he and his wife decided to add an apartment to the back of the funeral home. Meredith stated that the funeral home apartment was to be his permanent residence.

¶13.    The renovations included a water closet, washbasin, shower, and a sewer line. At the end of April 2018, after the renovations were complete, Meredith and his wife moved into the funeral home apartment. Meredith testified that the funeral home apartment was never zoned for mixed residential and commercial use; however, a city inspector did approve the renovations.

4

¶14.    Meredith also testified that, at the end of April 2018, a satellite television was installed at the funeral home apartment. The technician testified that the funeral home apartment was fully furnished, pets were living there, and it appeared that the funeral home apartment was Meredith's residence.

¶15.    Additional testimony showed that Meredith lived at the funeral home apartment. Mike Pittman testified that he was a co-tenant of the funeral home apartment.  In addition, Stewart Woods, who worked at the Firestone store across from the funeral home apartment, testified that he observed Meredith walking his dog early in the morning. Stewart further testified that since 2018 he has observed Meredith playing with his grandchildren and dog outside the funeral home apartment.

¶16.    There was also evidence that, in 2019, a spare bedroom was added to the funeral home apartment. Currently, the funeral home apartment has two bedrooms. Meredith's daughter and grandchildren stay in the second bedroom when the lake house floods.

¶17.    Drew Brown testified that he was a neighbor of the lake house.  Brown testified that he rarely saw Meredith at the lake house. This was consistent with Meredith's testimony that he visits the lake house occasionally to see his grandchildren. However, Meredith testified that when Meredith's wife was diagnosed with cancer in 2020, they visited the lake house less often because of the stairs.

¶18.    Meredith testified that he was called out to work cases as a coroner at all hours. He testified that the funeral home apartment was much more conducive to promptly arriving for work calls. Through his coroner reports, a Coahoma county map, and a compilation of

5

coroner call times over the last several years, Meredith demonstrated that he responded to coroner calls from his apartment at the funeral home.

¶19.   Pat Wood, a local security officer, testified that he patrolled the downtown area extensively overnight and that Meredith's vehicle was always present at the funeral home apartment. Wood patrolled the area because there had been issues with break-ins.

¶20.   Although an exact date was not confirmed, evidence showed that Meredith changed his voter registration address from the lake house to the funeral home apartment address.[1] On March 2, 2020, Meredith changed his voter registration from the funeral home apartment address to his mother-in-law's house, believing that he could not use the funeral home apartment address based on his conversation with Sykes.

¶21.   In 2020, Meredith's daughter, Dana Gaston, and his grandchildren moved into the lake house. Dana testified that she and her family temporarily moved to the lake house and do not pay any rent or utilities because her parents own the home. Meredith testified that he does not charge Dana rent because she recently went through financial hardships.

¶22.   At the close of the trial, the trial court noted that Meredith, without ill-intent, created a multi-residency scenario in reliance on his conversation with Sykes. Additionally, the trial court stated that no weight was placed on Meredith's driver's license or vehicle registration. The trial court also noted that it "did not place any credence" on the "zoning of the property"

---

[1] Also, Meredith changed his voter registration address to the funeral home apartment on January 2, 2019. The date reflects January 2, "201" and cuts off the last number. Meredith completed his coroner candidacy form on January 2, 2019, further evidencing that this change occurred in 2019. In addition, it is unlikely that the omitted number is an eight because Meredith did not claim to move into the funeral home apartment until Spring 2018. Testimony at trial ignores this exhibit, and the information was never addressed.

that Meredith "was living in."

¶23.    In a written opinion, the trial court found that Meredith was a resident of the lake house for election purposes. The trial court based the ruling on (1) Meredith's conflicting address on his qualifying form; (2) Meredith's voter registration's not being his place of residence; and (3) Meredith's homestead exemption on the lake house.

¶24.    On appeal, the question is whether Meredith resides at the funeral home apartment in Clarksdale city limits  or the lake house outside Clarkdale's city limits. Meredith argues that the trial court's order was against the overwhelming evidence because a candidate's domicile is based on his actual living arrangements and not by addresses listed on a document.  Espy argues that the trial court could not consider the funeral home apartment as Meredith's residence because it was not listed on the qualifying form.

## DISCUSSION

¶25.    In an election contest, questions of law are reviewed de novo. *Glenn v. Powell*, 149 So. 3d 480, 482 (Miss. 2014) (quoting *Sumner v. City of Como Democratic Exec. Comm.*, 972 So. 2d 616 (Miss. 2008)). Findings of fact in election contests "are reviewed for manifest error, and the verdict will not be disturbed unless it 'is the result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence.'" *Id.* at 483 (internal quotation mark omitted) (quoting *Boyd v. Tishomingo Cnty. Democratic Exec. Comm.*, 912 So. 2d 124, 128-9 (Miss. 2005)). However, if findings of fact were the result of an erroneous legal standard, then we review the issue de novo. *Langston v. Williams (In re Est. of Langston)*, 57 So. 3d 618, 619-20 (Miss. 2011) (quoting *Madden v. Rhodes*, 626 So. 2d 608, 616 (Miss.

7

1993)); ***Par Indust., Inc. v. Target Container Co.***, 708 So. 2d 44, 47 (Miss. 1998) (citing ***Miss. State Dep't of Hum. Servs. v. Barnett***, 633 So. 2d 430, 434 (Miss. 1993)).

¶26.     We review challenges to a candidate's residency for manifest error because a candidate's residency "clearly involves questions of fact." ***McQuirter v. Archie***, 311 So. 3d 1147, 1152 (Miss. 2020) (internal quotation mark omitted) (quoting ***Bryant v. Dickerson***, 236 So. 3d 28, 31 (Miss. 2017)); ***Hale v. State Democratic Exec. Comm.***, 168 So. 3d 946, 953 (Miss. 2015) (internal quotation mark omitted) (quoting ***Bryant v. Westbrooks***, 99 So. 3d 128, 131 (Miss. 2012)). "A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible, and reliable evidence." ***City of Vicksburg v. Williams***, 294 So. 3d 599, 601 (Miss. 2020) (internal quotation marks omitted) (quoting ***Miss. Dep't of Pub. Safety v. Durn***, 861 So. 2d 990, 994 (Miss. 2003)).

## I.      Jurisdiction

¶27.     This Court has appellate jurisdiction because the proper procedures were employed under Mississippi Code Section 23-15-961 (Rev. 2018).

## II.     Overwhelming Weight of the Evidence

¶28.     For the first time, this Court analyzes whether the trial court applied the proper standard of proof under Section 23-15-300. Ultimately, the trial court did not err as to the burden of proof, and, consequently, Meredith's domicile is reviewed for manifest error. Furthermore, sufficient evidence supported the trial court's findings. Therefore, this Court finds that the trial court did not err by finding Meredith domiciled at the lake house for

8

election purposes.

### A. Burden of Absolute Proof

¶29. This Court must interpret Section 23-15-300, which applies to elections held from and after January 1, 2020. Section 23-15-300 provides, in relevant part:

> (1) Any candidate for any municipal . . . office shall be a resident of the municipality . . . that he or she seeks to represent in such office for two (2) years immediately preceding the day of election. The provisions of this section shall not apply to any municipality with less than one thousand (1,000) residents according to the latest federal decennial census.

> (2) *A candidate shall prove* in his or her qualifying information that he or she meets the applicable residency requirement *or provide absolute proof*, subject to no contingencies, *that he or she will meet the residency requirement* on or before the date of the election at which the candidate could be elected to office. The appropriate election official or executive committee, whichever is applicable, with whom a candidate files qualifying information shall review and determine whether the candidate meets the applicable residency requirement according to the procedures in Section 23-15-299. The appropriate election commission shall review and determine whether a candidate required to file qualifying information with it meets the applicable residency requirement according to the procedures in Section 23-15-359.

Miss. Code Ann. § 23-15-300 (Supp. 2021) (emphasis added). Two applicable burdens of proof exist under Section 23-15-300. First, preponderance of the evidence is the burden of proof applicable when the address listed in the candidate's qualifying information is challenged. Miss. Code Ann. § 23-15-300(2); *Hale*, 168 So. 3d at 954 n.4 (citing *Newman v. Newman*, 558 So. 2d 821, 825 (Miss. 1990)). Second, absolute proof is the burden of proof applicable when a candidate fails to prove that they meet the two-year residency requirement in their qualifying information. Miss. Code Ann. § 23-15-300(2).

¶30. In *Hale*, prior to the enactment of Section 23-15-300, this Court interpreted

9

Mississippi Code Section 23-15-299(7) (Rev. 2018) and held that candidates, in every instance, had to prove by a preponderance of the evidence that they resided in the district for two years before the applicable election. *Hale*, 168 So. 3d at 954 n.4. Before *Hale*, candidates that failed to prove their residency in the qualifying statement had to prove their residency by absolute proof, "subject to no contingencies, at the time of the general election." *Garner v. Miss. Democratic Exec. Comm.*, 956 So. 2d 906, 911 (Miss. 2007); Miss. Code Ann. § 23-15-299(7); *Edwards v. Stevens*, 963 So. 2d 1108 (Miss. 2007); *Young v. Stevens*, 968 So. 2d 1260 (Miss. 2007); *Cameron v. Miss. Republican Party*, 890 So. 2d 836 (Miss. 2004); *Grist v. Farese*, 860 So. 2d 1182 (Miss. 2003). The *Hale* Court held:

> [T]he only criterion a candidate must show by "absolute proof" is that "he will meet the qualifications on or before the date of the . . . election." The "absolute proof" burden of production does not extend to a candidate's underlying qualifications themselves. Moreover, imposing a burden of "absolute proof" on a candidate's underlying qualifications for office is unprecedented and inconsistent with our case law. In [*Garner*, 956 So. 2d 906], this Court engaged in a bifurcated analysis to determine whether the candidate was qualified for office. First, the Court engaged in an ordinary analysis regarding the location of the candidate's domicile, employing a 'manifest error' standard of review. *Id.* at 909-10. Then, the Court determined that the candidate had failed to provide 'absolute proof that he would meet the requirements to seek office. *Id.* at 911.

*Hale*, 168 So. 3d at 954 (second alteration in original) (footnote omitted) (citation omitted).[2]

---

[2] According to *Hale*, Section 23-15-299(7), in pertinent part, stated:

If the proper executive committee finds that a candidate either (a) is not a qualified elector, (b) does not meet all qualifications to hold the office he seeks and fails to provide absolute proof, subject to no contingencies, that he will meet the qualifications on or before the date of the general or special election at which he could be elected . . . then the name of such candidate shall not be placed on the ballot.

10

¶31.   "The Legislature is assumed to be aware of judicial interpretations of its statutes[.]"

*McDaniel v. Cochran*, 158 So. 3d 992, 1000 (Miss. 2014). Since *Hale*, the Legislature

enacted Section 23-15-300 and clarified that

> (2) *A candidate shall prove in* his or her qualifying information that he or she
> meets the applicable residency requirement *or provide absolute proof*, subject
> to no contingencies, that he or she will meet the residency requirement on or
> before the date of the election at which the candidate could be elected to
> office.

Miss. Code Ann. § 23-15-300 (emphasis added). The language of Section 23-15-300 is

"unambiguous, and the intent of the Legislature is clear[,]" *Wallace v. Town of Raleigh*, 815

So. 2d 1203, 1209 (Miss. 2002), that when a candidate is unable to prove their residency in

their qualifying form, the candidate must prove their residency by absolute proof. Miss. Code

Ann. § 23-15-300.

¶32.   Based on Section 23-15-300 and *Hale*, we now find that to receive the benefits of the

preponderance-of-the-evidence burden of proof, a candidate must claim to live at the

residence listed in their qualifying information. Miss. Code Ann. § 23-15-300; *Hale*, 168 So.

3d at 954 n.4. A candidate forfeits the preponderance-of-the-evidence burden when they

allege a residence not listed on their form. Miss. Code Ann. § 23-15-300. Furthermore,

satisfying the two-year residency requirement cannot be subject to contingencies. *Hale*, 168

So. 3d at 954. If satisfying the residency requirements is subject to a contingency, then the

candidate has to provide absolute proof that they will meet the residency requirement before

the applicable election. *Id.* For example, absolute proof was required when satisfying the

---

*Hale*, 168 So. 3d at 954 (alteration in original) (quoting Miss. Code Ann. § 23-15-299(7)
(Rev. 2007)).

11

residency requirement was contingent upon a real estate or rental contract. ***Cameron v. Miss. Republican Party***, 890 So. 2d 836, 841-43 (Miss. 2004). Additionally, a preponderance-of-the-evidence burden of proof would not apply when a candidate will satisfy the residency requirement after the qualifying deadline, but before the election date. *Cf. **Hale***, 168 So. 3d at 946.

¶33.    Under these facts, the Court must determine the applicable burden of proof. "[A] candidate's qualification requires that the determination be made upon filing for office and not at the time of the election." ***Garner***, 956 So. 2d at 911. Meredith filed his qualifying information with his mother-in-law's address. Therefore, at the committee hearing, Meredith had to prove by a preponderance of the evidence that he resided at his mother-in-law's residence. Miss. Code Ann. § 23-15-300; ***Hale***, 168 So. 3d at 954 n.4.

¶34.    At the hearing, Meredith abandoned the address in his qualifying form for the funeral home apartment. Meredith admitted that he never lived at his mother-in-law's residence. Meredith never filed a second qualifying statement nor did he update the address on the form. Instead, he claimed to be a resident of the funeral home apartment at the committee hearing. Consequently, when Meredith abandoned his mother-in-law's address as his residence, he failed to prove his residence "in his qualifying information." Miss. Code Ann. § 23-15-300. Therefore, Meredith had the burden to provide absolute proof that he satisfied the residency requirement. Miss. Code Ann. § 23-15-300.

¶35.    The trial court found that the "candidate does not have to provide absolute proof of residency." However, "[w]here it is apparent from the record that the court understood the

12

burdens and applied them faithfully, we will not reverse for a slip of the tongue or ambiguity of a comment from the bench." *Clardy v. Nat'l Bank of Com. of Miss.*, 555 So. 2d 64, 67 (Miss. 1989).

¶36. The trial court applied and held Meredith to a higher standard and ultimately found that Meredith did not satisfy the residency requirements. Also, the trial court correctly noted that absolute proof does not require 100 percent certainty. ("The candidate doesn't have to prove residency by absolute proof. I don't know that there—that a candidate would be able to do such a thing. So I don't believe that's what's required in this case"). *See generally Edwards*, 963 So. 2d at 1109-10; *Cameron*, 890 So. 2d at 840-43; *Grist*, 860 So. 2d at 1186-87.

¶37. Thus, under Section 23-15-300, if a candidate *fails to prove in their qualifying information* that they meet the two-year residency requirement, then the candidate must prove by absolute proof that they meet or will meet the residency requirement on or before the applicable election. Moreover, the trial court's decision is similar to previous candidate residency challenges in which courts required absolute proof of residency. *Edwards*, 963 So. 2d at 1109-10; *Cameron*, 890 So. 2d at 840-43. The trial court did not apply an erroneous legal standard. Therefore, the trial court's opinion is reviewed "for manifest error, including whether the findings were the product of prejudice, bias, or fraud, or manifestly against the weight of the credible evidence." *Young*, 968 So. 2d at 1263 (citing *Boyd*, 912 So. 2d at 124).

      **B.**      **Domicile**

13

¶38. The question for this Court to consider is whether the trial court's finding that Meredith failed to satisfied the two-year residency requirement for candidates of municipal offices under Section 23-15-300(1) was against the weight of credible evidence. *Young*, 968 So. 2d at 1263. To qualify as a mayoral candidate, Meredith had to prove that he has been a Clarksdale resident since April 6, 2019, two years before the April 6, 2021 Clarksdale mayoral election. Miss. Code Ann. § 23-15-300(1). To clarify, under Section 23-15-300, Meredith did not have to prove that he resided at the same address for two years; instead, Meredith had to prove that he resided within the city of Clarksdale for two years.

¶39. Residency under Mississippi election law is based on a person's domicile. *Hale*, 168 So. 3d at 951. Domicile requires that "there must have been (1) an actual residence voluntarily established in said [municipality], (2) with the *bona fide* intention of remaining there, if not permanently, at least indefinitely." *Id.* at 951(internal quotation marks omitted) (quoting *Smith v. Smith*, 194 Miss. 431, 434, 12 So. 2d 428, 429 (1943))).

¶40. In *Bryant v. Westbrooks*, 99 So. 3d 128, 133 (Miss. 2012) (alterations in original) (emphasis omitted) (quoting *Young*, 968 So. 2d at 1263), the Court ruled that:

> The determination of a person's "permanent home and principal establishment" turns on actual proof of a person's living arrangements. It is not satisfied with a simple declaration that one intends to be a resident of a particular county when the overwhelming proof shows that he actually resided elsewhere. It is not enough that [the candidate] considers himself an official resident of [the district]. He must actually reside there permanently.

"[I]ntention may be established by physical presence, declaration of intent, and all relevant facts and circumstances, and in this connection it has been held that *the declarations of the party himself are most important*." *Hale*, 168 So. 3d at 952 (internal quotation marks

14

omitted) (quoting ***Stubbs v. Stubbs***, 211 So. 2d 821, 825 (Miss. 1968)).

¶41.    "A domicile continues until another is acquired; before a domicile can be considered lost or changed, a new domicile must be acquired by removal to a new locality with the intent to remain there, and the old must be abandoned without intent to return thereto." ***Bryant***, 99 So. 3d at 133 (quoting ***Young***, 968 So. 2d at 1263). "[T]he exercise of political rights, admissions, declarations, the acts of purchasing a home and long-continued residency are circumstances indicative of his intention to abandon his domicile of origin and to establish a new domicile." ***Hale***, 168 So. 3d at 953 (internal quotation marks omitted) (quoting ***Johnson v. Johnson***, 191 So. 2d 840, 842 (Miss. 1966)).

¶42.    Meredith argues that the trial court's decision was against overwhelming evidence because "all of the actual proof presented at trial" showed that Meredith resided in Clarksdale for at least two years prior to the election. Namely, no one testified that Meredith "actually resides" at the lake house. Meredith asserts that the trial court placed too much weight on Meredith's homestead exemption, voter registration, and qualifying papers. Meredith further contends that Espy failed to present a scintilla of proof that Meredith does not reside in Clarksdale.

¶43.    Espy argues that the trial court did not err by finding that Meredith was a resident of the lake house for election purposes. Espy maintains that Meredith failed to abandon the lake house as his primary residence because of his continued use of the property along with Meredith's continued enjoyment of the homestead exemption on the lake house.

¶44.    Espy contends that Meredith fails to dispute the trial court's findings of fact.

15

However, residency is a finding of fact, which is challenged on review, *Bryant*, 99 So. 3d at 134; therefore, the argument is misplaced.

¶45.    For the first time on appeal, Espy argues that Meredith is not a qualified elector under Mississippi Code Section 23-15-309(4) (Rev. 2018) because he is registered to vote at an address where he admittedly does not reside. This issue was not raised in Espy's petition to challenge Meredith's residency qualifications or at trial. This Court does not consider issues raised for the first time on appeal. *Waters v. Gnemi*, 907 So. 2d 307, 324 (Miss. 2005) (citing *Triplett v. Mayor & Alderman of Vicksburg*, 758 So. 2d 399, 401 (Miss. 2000)); *Boyd*, 912 So. 2d at 133 (citing *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 147 (Miss. 1998)).

¶46.    Typically, "the declarations of *the party himself are most important*." *Hale*, 168 So. 3d at 952 (internal quotation mark omitted) (quoting *Stubbs*, 211 So. 2d at 825). Although Meredith testified that he resides at the funeral home apartment and intends to remain indefinitely, his declaration must be accompanied by evidence of his actual living arrangements and activities in Clarksdale. *Young*, 968 So. 2d at 1264 ("It is not enough that Young considers himself an official resident of Humphreys County. He must actually reside there permanently."); *McQuirter*, 311 So. 3d at 1156.

¶47.    The trial court determined that it was important that Meredith filed his homestead exemption on the lake house. In Mississippi, "there is a strong but rebuttable presumption of residency in the county where the homestead exemption is filed." *Hale*, 168 So. 3d at 952 (internal quotation marks omitted) (quoting *Hinds Cnty. Elec. Comm'n v. Brinston*, 671 So.

16

2d 667, 669 (Miss. 1996)). The homestead statute defines a dwelling as the place "actually occupied as the primary home of a family group." *Young*, 968 So. 2d at 1264 (Miss. 2007) (internal quotation marks omitted) (citing Miss. Code Ann. § 27-33-19 (Rev. 2006)). "[A] simple declaration" of intent without actual proof of residence is insufficient to overcome this presumption. *Id.* at 1264. Therefore, the homestead presumption is rebutted by evidence of an individual's actual living arrangements and looks at their "true, fixed, permanent home and principal establishment[.]" *Id.* at 1264.

¶48.     At trial, evidence was offered that Meredith and his wife actually sleep and live at the funeral home apartment in Clarksdale. Photos, receipts, and testimony indicated that the funeral home apartment was renovated twice. The evidence also revealed that Meredith and his wife keep the funeral home apartment stocked with clothes and food and that Meredith kept his pets there.

¶49.     Meredith asserts that he attends church, banks, and shops in Clarksdale. Meredith works in Clarksdale and owns a business in Clarksdale.

¶50.     Evidence at trial further corroborated Meredith's claim that he sleeps at the funeral home apartment. Namely, Meredith arrived more quickly to coroner calls made throughout the night than he would have had he lived at the lake house. The funeral home apartment is evidence of his permanent residence because the "house is much closer to where [Meredith] currently works[.]" *Garner*, 956 So. 2d at 910 (considering evidence of a candidate's permanent residence because "the house is much closer to where he currently works").

¶51.     Meredith testified under oath that he moved to the funeral home apartment with the

17

intent to remain there indefinitely. Meredith presented evidence that he chose to reside at the funeral home apartment rather than the lake house and that he considered the funeral home apartment his permanent residence.

¶52. Although Meredith is currently not registered to vote at the funeral home apartment, he is also not registered to vote at the lake house. Yet Meredith is registered to vote in the city of Clarksdale and not in the city of Alligator. Notably, Meredith's voter registration has changed at least twice since he moved to the funeral home apartment in 2018, yet Meredith's testimony has continually claimed only one residence during the same time period.

¶53. Evidence that Meredith maintains the lake house as his primary residence includes continued use of the lake house, continued ownership of the lake house, and continued payment of lake house utilities. Additionally, Meredith enjoys the benefits of a homestead exemption on the lake house. Furthermore, Meredith's vehicles and driver's license are registered to the lake house.

¶54. The trial court was tasked with whether Meredith proved his residency by absolute proof, and given Meredith's continued contacts and use of the property, found that Meredith was a resident of the lake house for election purposes. Where there is substantial evidence to support the trial court's findings, this Court is without authority to disturb its conclusions, although it may have found otherwise as an original matter. *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (Miss. 2014) (citing *City of Ellisville v. Richardson*, 913 So. 2d 973, 978 (Miss. 2005)). Furthermore, manifest error "is highly deferential to the [circuit judge sitting without a jury], who has the opportunity to hear all the testimony and observe the demeanor

18

of all the witnesses firsthand." ***Coulter v. Dunn***, 312 So. 3d 713, 715 (Miss. 2021) (internal quotation mark omitted) (quoting ***J.C.N.F. v. Stone Cnty. Dep't of Hum. Servs.***, 996 So. 2d 762, 766 (Miss. 2008)); ***Lewis***, 153 So. 3d at 693 ("A circuit court judge sitting without a jury is afforded the same deference as a chancellor." (internal quotation mark omitted) (quoting ***City of Jackson v. Sandifer***, 107 So. 3d 978, 983 (Miss. 2013))). "Although reasonable minds might differ on the conclusion of whether . . . [Meredith was a resident of the lake house], it is beyond this Court's power to disturb the findings of the [circuit] judge if supported by substantial evidence." ***Williams***, 294 So. 3d at 601 (third alteration in original) (internal quotation marks omitted) (quoting ***Miss. Dep't of Wildlife, Fisheries, and Parks v. Webb***, 248 So. 3d 772, 777 (Miss. 2018)).

¶55.    Given the significant weight placed on Meredith's qualifying form and contacts with the lake house, the trial court's findings were supported by substantial evidence. "Having examined the" trial court's "judgment and the record presented to this Court, we find that the judgment is supported by ample evidence and is legally sound." ***Coulter***, 312 So. 3d at 715. Therefore, the trial court's "findings of fact were not manifestly in error inasmuch as his findings were not the product of prejudice, bias, or fraud, or manifestly against the weight of the credible evidence." ***Young***, 968 So. 2d at 1265 (citing ***Boyd***, 912 So. 2d at 128).

## CONCLUSION

¶56.    The trial court did not err by holding Meredith to the burden of absolute proof. Furthermore, given the heightened burden, the trial court did not err by concluding that Meredith was not a resident of Clarksdale for election purposes. The judgment of the

Coahoma County Circuit Court is affirmed.

¶57. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶58. When it went into effect, Mississippi Code Section 23-15-300 imposed an "absolute proof" burden of persuasion in a narrow subset of cases It reads, in pertinent part, as follows:

> A candidate shall prove in his or her qualifying information that he or she meets the applicable residency requirement *or* provide absolute proof, subject to no contingencies, that he or she *will meet the residency requirement on or before the date of the election* at which the candidate could be elected to office.

Miss. Code Ann. § 23-15-300(2) (Supp. 2021) (emphasis added). The statute does not contemplate today's facts. Rather, it addresses the possibility of a candidate's not yet meeting the residency requirement at filing but meeting it on or before the election—a possibility acknowledged by the majority. Despite the less-than-perfect fit, I agree with the majority's application of the above-quoted language in today's case. Indeed, Meredith could not claim to have proved his residency in his qualifying information when he himself later disavowed the residence that he claimed. Accordingly, he had no other option than to prove by absolute proof that he would meet the residency requirement on or before the election.

¶59. I disagree, however, that the trial judge did not err by requiring an incorrect burden of persuasion. It is not in the court's bailiwick to impose its judgment for that of the Legislature. It is a "fundamental rule" that "the legislature has the power to enact any law

20

it sees fit, be it sincere or hypocritical, moral or immoral, wise or foolish, beneficial or harmful, provided it does not violate the prohibitions of the State or Federal Constitution." *State v. Wood*, 187 So. 2d 820, 827 (Miss. 1966). Nor are we to decide for ourselves what we as judges believe a statute should provide. Rather, we must "determine what it does provide." *Lawson v. Honeywell Int'l*, *Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011) (citing *Russell v. State*, 231 Miss. 176, 94 So. 2d 916 (1957)).

¶60. For whatever reason, the Legislature chose to require "absolute proof, subject to no contingencies" when a candidate cannot or will not prove he or she meets the residency requirement in the qualifying information. While I agree with the sentiment expressed by the majority and the trial judge that such a high level of persuasion could well nigh be impossible, it is what the Legislature requires and, in the record before us, the trial judge explicitly refused to apply it.

¶61. Nevertheless, I agree with majority's affirming the judgment of the trial court. Although the trial judge failed to follow the statutory directive, Meredith's proof failed to meet the lower burden of persuasion erroneously applied by the trial judge. Accordingly, it is beyond a reasonable doubt that he would likewise have failed to meet the legislatively mandated absolute proof standard, and the trial judge's error was therefore harmless.

21